# ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. STATE OF ARKANSAS.

## ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 119. Argued February 25, 26, 1914.—Decided December 7, 1914.

While this court is concluded as to the mere construction of a state tax statute by the decision of the highest court of the State, it is not concluded by the state court's characterization of the scheme of taxation in determining whether it deprives a party of rights secured by the Federal Constitution.

In determining the nature of a state tax and constitutionality of the statute imposing it, this court must regard substance rather than form and the controlling test is found in the operation and effect of the statute as applied and enforced.

A state statute imposing an annual franchise tax upon the right to exist as a corporation or to exercise corporate powers within the State, the amount being fixed solely by reference to the property of the corporation within that State and used in intra-state business and excluding any imposition upon or interference with interstate commerce, does not run counter to, and is not unconstitutional under, either the commerce clause of, or the Fourteenth Amendment to, the Federal Constitution; and so held as to those provisions of the Annual Franchise Tax Statute of Arkansas of 1911, involved in this case.

Such a tax is not repugnant to the due process clause on the ground of being in effect a tax upon property beyond the State as it is measured by reference to property situate wholly within the State.

Property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, and may take the form of a tax for privilege of exercising its franchise within the State, if measured on value of property wholly within the State, and provided payment of the tax be not made a condition precedent to carrying on business including interstate business, but the enforcement of the tax left to ordinary means for collection of taxes. *Postal Tel. Co.* v. *Adams*, 155 U. S. 688.

Nothing in the Fourteenth Amendment imposes an iron clad rule upon States with respect to internal taxation, or prevents double taxation or any other form of unequal taxation so long as the inequality is not based on arbitrary distinctions.

A provision in a state statute forfeiting the right of a foreign corpora-
tion engaged in interstate commerce to transact interstate commerce
within the State on account of non-payment of a tax imposed on such
corporations as to their intra-state business, might render the statute
unconstitutional as a regulation of interstate commerce unless it
could be treated as separable.

This court will not regard such a provision of the statute as inseparable
and strike down the entire statute in advance of such a construction
by the state court in a case to collect the tax as a debt and not to
forfeit the franchise for non-payment.

In exercising jurisdiction under § 237, Judicial Code, this court should
wait until the state court has construed the statute attacked rather
than to assume that the state court will construe it so as to make it
repugnant to the Federal Constitution.

If a statute will bear two constructions, one within and the other beyond
constitutional limitations, the courts should adopt the former, as
legislatures are presumed to act within their authority.

In construing the Arkansas Annual Franchise Tax Statute of 1911 this
court will assume, until the State places a different construction upon
it, that the provision for forfeiture for non-payment is limited in its
operation to intra-state commerce, or else if construed as applying
to interstate commerce it will be treated as void for unconstitution-
ality under the commerce clause and severable from the other pro-
visions of the statute.

106 Arkansas, 321, affirmed.

THE Attorney General of Arkansas, proceeding under
Act No. 112, approved March 23, 1911, entitled "An Act
for an annual franchise tax on corporations doing business
in the State of Arkansas," (Acts of Arkansas, 1911, p. 67),
brought this suit in one of the courts of the State to re-
cover a tax levied against the St. Louis Southwestern
Railway Company by the state Tax Commission under
the provisions of that act for the year 1911, amounting
to the sum of $6,798.26, besides a penalty and interest.

The act is one of three that were passed by the General
Assembly during the same year, designed for the purpose
of obtaining revenue from corporations doing business in
the State. The first of these is Act No. 87, approved
March 8 (Acts 1911, p. 48), which prescribes the fees to

be paid by domestic corporations for the filing of their articles of incorporation and by foreign corporations for the privilege of doing intra-state business in Arkansas. Its eighth section requires railroad and other transportation companies organized under the laws of the State to pay incorporation fees based upon the mileage of their lines; and, by § 9, "All foreign railroad, street, interurban or other transportation companies now doing intra-state business, or desiring to engage in intra-state business, or authorized to engage in intra-state business, shall, before being permitted to continue to do intra-state business, or authorized to engage in intra-state business, shall pay the same fees as are required of such domestic corporations."

Act No. 112 provides for what are called "annual franchise taxes" on corporations doing business in the State. The first three sections refer to domestic corporations doing business for profit. Sections 4 and 5 require each foreign corporation for profit doing business in the State, and owning or using a part or all of its capital or plant in the State, to make an annual return to the Tax Commission, showing among other things the total amount of its capital stock, the market value of the same, and the value of property owned and used by it, within and without the State respectively. Section 6 provides that the Commission, from the facts thus reported and any other facts bearing upon the question, shall determine "the proportion of the authorized capital stock of the company represented by its property and business in this State," and shall report the same to the Auditor, who shall charge and certify to the Treasurer for collection annually from such company, "in addition to the initial fee otherwise provided by law, for the privilege of exercising its franchise in this State, one-twentieth of one per cent. each year thereafter upon the proportion of the outstanding capital stock of the corporation represented by property owned and used in

business transacted in this State." Section 12 requires the
Attorney General to collect the tax, with an added penalty
for delinquency in payment, by suit to be brought in the
name of the State. By § 14 the tax and penalty are made
a first lien upon all property of the corporation. By § 15,
if a corporation "organized under the laws of Arkansas or
any foreign country authorized to do business in this State
for profit" fails or neglects to make the report or pay the
tax prescribed for thirty days after the expiration of the
time limited by the act, and the default is willful and in-
tentional, an action may be brought by the Attorney
General or prosecuting attorney to forfeit and annul the
charter of the corporation, and "if the court is satisfied
that such default is wilful and intentional it shall revoke
and annul such charter." By § 20, when any corporation
shall have paid the franchise tax prescribed by the act,
the Tax Commission, or the Secretary of State if the Com-
mission be abolished, is required to issue to it a certificate
authorizing it to do business in the State for the term of
five years, upon condition that it pay annually the fran-
chise tax prescribed by the Act, and such certificate is
made evidence in all the courts of the State of the right of
the corporation to do business in the State during the
term of the certificate. And, "In case any corporation
shall fail to pay the franchise tax prescribed by this Act
when it becomes due during the term of said certificate,
the said tax commission shall cancel said certificate, and
said corporation shall forfeit its right to do business in this
State, in addition to the other penalties prescribed in this
Act." By Act No. 313, approved May 26, 1911 (Acts
1911, p. 285), Act No. 112 was amended with respect to
the time of its taking effect, and in another particular not
now pertinent.

On May 4, the Legislature passed Act No. 251, entitled
"An Act to provide the manner of assessing for taxation
the property of railroads, express, sleeping car, telegraph,

telephone and pipe lines companies." (Acts of Arkansas, 1911, p. 233.) This provides that the property of railroad corporations, and of the others named in the title, shall be assessed by the Tax Commission. Section 2 is as follows:

"Section 2. The franchise (other than the right to be a corporation) of all railroads, express, telegraph and telephone companies, are declared to be property for the purpose of taxation and the value of such franchises shall be considered by the assessing officers when assessing the property of such corporations. In valuing for assessment purposes the property of such corporations the Arkansas Tax Commission shall determine the total value of the entire property of the corporation, tangible and intangible."

Section 9 requires railroad companies to file with the Tax Commission statements showing their physical property in the State. Section 10 requires that the statement shall show "the aggregate value of the whole railroad, and there shall be taken into consideration in fixing said value the entire right-of-way as given by the charter of the company or statutes of the State, the franchises, privileges and everything of any character whatever situated upon the right-of-way of the road connected with or appertaining to it in any way which adds to its earning power or gives the railroad value as an entire going thing."

The defendant, a Missouri corporation, owning and operating lines of railroad in the States of Missouri, Arkansas and other States, over which it carries both intrastate and interstate commerce, made its report for the year 1911 in accordance with Act No. 112, but under protest, reserving the right to contest the validity of the Act. This report, among other things, showed that the total amount of authorized capital stock was $55,000,000.00 and the total amount of issued and outstanding capital stock was $36,249,750.00. The Commission found the

proportion of the outstanding capital stock represented by property owned and used by defendant in business transacted in the State of Arkansas for the year 1911 to be $13,596,520.00, on which the franchise tax amounted to $6,798.26.

The complaint filed in behalf of the State herein set forth the making of the report by defendant as mentioned and the taking of the necessary proceedings to fix its responsibility under the provisions of Act No. 112.

Defendant's answer, besides setting up its status as a railway corporation incorporated under the laws of Missouri, owning and operating a railway line in Arkansas and several other States, and engaged as a common carrier in interstate business in those States, and also doing intrastate business in the State of Arkansas pursuant to its laws, averred that its property in that State was assessed for the purposes of general taxation for the year 1910 at the value of $9,155,965.00 and the tax levied thereon amounted to $191,713.95, which defendant paid; and that under Act No. 251, approved May 4, 1911, the state Tax Commission assessed its property within the State for tax purposes for the latter year at the value of $11,260,240, upon which assessment taxes had been levied in the sum of $239,388.84, which defendant offered to pay (and has since paid), and averred that the tax sued on "is a tax upon the privilege and right of this defendant to do both an interstate and intra-state business in the State of Arkansas, and is a tax upon the interstate business, property and income of the defendant, and is a tax placed and imposed upon defendant for the privilege of engaging in interstate commerce and an attempt to regulate interstate commerce and a burden thereon; and that if said Act is enforced defendant will be deprived of its right to engage in an interstate business in and through the State of Arkansas." The answer also challenged the validity of Act No. 112, as applied and attempted to be enforced against

defendant, on the ground that it amounted to a taking of its property without due process of law and a denial of the equal protection of the laws.

The Attorney General's demurrer to this answer was sustained, and, the defendant declining to plead further, judgment was entered for the tax and penalty sued for.

The Supreme Court of the State affirmed the judgment (106 Arkansas, 321), and the present writ of error was sued out.

*Mr. William T. Wooldridge*, with whom *Mr. Samuel H. West*, *Mr. Edward A. Haid* and *Mr. Frank G. Bridges* were on the brief, for plaintiff in error:

Act No. 112, of Arkansas, as construed by the Supreme Court of Arkansas, being the necessary basis for this suit, and being, by its terms and as so construed, a burden on interstate commerce, there is a Federal question involved, and this court has jurisdiction. *Arrowsmith* v. *Harmoning*, 118 U. S. 194; *Leathe* v. *Thomas*, 207 U. S. 93; *Houston &c. R. R.* v. *Mayes*, 201 U. S. 321; *Wabash &c. Ry.* v. *Illinois*, 118 U. S. 557; *St. Louis S. W. Ry.* v. *Arkansas*, 217 U. S. 136; *Seaboard Air Line* v. *Duvall*, 225 U. S. 477.

The act as so construed is void, because the tax is a regulation of interstate commerce, in that it imposes a direct burden upon that portion of the business and capital of the plaintiff in error which is engaged in and devoted to interstate commerce. *Fargo* v. *Michigan*, 121 U. S. 230; *Philadelphia S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Ratterman* v. *West. Un. Tel. Co.*, 127 U. S. 411; *Leloup* v. *Mobile*, 127 U. S. 640; *West. Un. Tel. Co.* v. *Pennsylvania*, 128 U. S. 39; *West. Un. Tel. Co.* v. *Alabama*, 132 U. S. 472; *G. H. & S. A. Ry.* v. *Texas*, 210 U. S. 217; *Fargo* v. *Hart*, 193 U. S. 490; *A. & P. Tel. Co.* v. *Philadelphia*, 190 U. S. 160; *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 146; *Webster* v. *Bell*, 68 Fed. Rep. 183; *State Freight Tax Cases*, 15 Wall. 232; *Express Co.* v. *Seibert*, 142

U. S. 339; *Postal Tel. Co.* v. *Adams*, 155 U. S. 688; *Allen* v. *Pullman Co.*, 191 U. S. 179; *Pullman Co.* v. *Adams*, 189 U. S. 420; *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 216; *Williams* v. *Talladega*, 226 U. S. 404; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68; *Freeo Valley R. R.* v. *Hodges*, 105 Arkansas, 314; *Adams Express Co.* v. *New York*, 232 U. S. 14.

The act as so construed, in connection with Act No. 251, subjects the property of plaintiff in error to double taxation and the tax is in violation of the due process of law clause, and because it attempts to impose taxes upon property beyond the jurisdiction of the State of Arkansas; the tax also denies to plaintiff in error equal protection of the law. *A. & P. Tel. Co.* v. *Philadelphia*, 190 U. S. 165; *Post. Tel. Co.* v. *Adams*, 155 U. S. 688; *Galveston &c. Ry.* v. *Texas*, 210 U. S. 217; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *Atchison &c. R. R.* v. *O'Connor*, 223 U. S. 280; *Southern Ry.* v. *Greene*, 216 U. S. 400; *Harris Lumber Co.* v. *Grandstaff*, 78 Arkansas, 187.

*Mr. William H. Rector*, with whom *Mr. William L. Moose*, Attorney General of the State of Arkansas, *Mr. De E. Bradshaw, Mr. Lewis Rhoton* and *Mr. Thomas E. Helm* were on the brief, for defendant in error:

The right of the State to exact from a railway company a tax upon that portion of its property actually within its borders, and, in assessing it for the purposes of taxation, to take into consideration its value as a going concern and as a part of a general system extending over several States, is thoroughly established by the decisions of this court, and is not inhibited by Art. I, § 8, of the Federal Constitution. *Am. Refrigerator Co.* v. *Hall*, 174 U. S. 70; *Union Refrigerator Co.* v. *Lynch*, 177 U. S. 149; *Pullman Car Co.* v. *Pennsylvania*, 141 U. S. 18; *West. Un. Tel. Co.* v.

*Taggart,* 163 U. S. 1; *West. Un. Tel. Co. v. Attorney General,* 125 U. S. 530; *Same v. Same,* 141 U. S. 40; *Adams Exp. Co. v. Ohio,* 165 U. S. 194; *Maine v. Grand Trunk R. R.,* 142 U. S. 217; *Pittsburg &c. R. R. v. Backus,* 154 U. S. 421; *Cleveland &c. R. R. v. Backus,* 154 U. S. 439; *Indiana Express Company Cases,* 165 U. S. 256; *Henderson Bridge Co. v. Kentucky,* 166 U. S. 150; *Adams Exp. Co. v. Kentucky,* 166 U. S. 171.

As construed by the Supreme Court of Arkansas, the tax here involved is a legal exaction, intended to reach and make amenable to taxation an element of value which is a well-recognized factor in ascertaining the full value of corporate property, and which expressly has been omitted from taxation in the general enactments relative to the assessment and collection of taxes upon property owned by railway corporations and actually situated in the State of Arkansas. As thus construed, it is not a burden upon interstate commerce nor upon the right of the plaintiff in error to engage in such commerce, and it is therefore not repugnant to Art. I, § 8, of the Constitution of the United States. *Maine v. Grand Trunk R. R.,* 142 U. S. 217; *United States Express Co. v. Minnesota,* 223 U. S. 335; *Pullman Car Co. v. Pennsylvania,* 141 U. S. 18; *West. Un. Tel. Co. v. Massachusetts,* 125 U. S. 530; *Pittsburg &c. R. R. v. Backus,* 154 U. S. 421; *West. Un. Tel. Co, v. Taggart,* 163 U. S. 1; *Am. Refrigerator Co. v. Hall,* 174 U. S. 70; *Adams Exp. Co. v. Ohio,* 165 U. S. 194; *West. Un. Tel. Co. v. Kansas,* 216 U. S. 1; *West. Un. Tel. Co. v. Attorney General,* 145 U. S. 549; *Galveston &c. R. R. v. Texas,* 210 U. S. 217; *Myer v. Wells-Fargo & Co.,* 223 U. S. 298; *Fargo v. Hart,* 193 U. S. 490; *Wisconsin &c. R. R. v. Powers,* 191 U. S. 379.

If the tax be regarded as a privilege, license or excise tax, rather than as a tax upon property, it is nevertheless a valid exercise by the State of its right to prescribe the terms and conditions upon which corporations may

transact an intrastate business within its borders, and, inasmuch as it is not based in whole or in part upon interstate business or upon property beyond the State, it is not violative of the Federal Constitution as amounting to a burden upon interstate commerce. *Hammond Packing Co. v. State,* 212 U. S. 322; *Am. Smelting Co. v. Colorado,* 204 U. S. 103; *Security Ins. Co. v. Prewett,* 202 U. S. 246; *Hooper v. California,* 155 U. S. 648; *Allgeyer v. Louisiana,* 165 U. S. 578; *Osborne v. Florida,* 164 U. S. 650; *Pullman Co. v. Adams,* 189 U. S. 420; *Armour Packing Co. v. Lacy,* 200 U. S. 226; *Kehrer v. Stewart,* 197 U. S. 60; *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28; *Orient Ins. Co. v. Daggs,* 172 U. S. 557; *John Hancock Ins. Co. v. Warner,* 181 U. S. 73; *West. Un. Tel. Co. v. Texas,* 105 U. S. 460; *Horn Silver Co. v. New York,* 143 U. S. 305; *Pembina Mining Co. v. Pennsylvania,* 125 U. S. 181; *Home Ins. Co. v. New York,* 134 U. S. 594; *California v. Pacific R. R.,* 127 U. S. 41; *Ashley v. Ryan,* 153 U. S. 436; *Postal Tel. Co. v. Charleston,* 153 U. S. 692; *Williams v. Talladega,* 226 U. S. 404; *Ewing v. Leavenworth,* 226 U. S. 464; *Adams Express Co. v. New York,* 232 U. S. 14; *New York v. Roberts,* 171 U. S. 658; *Allen v. Pullman Co.,* 191 U. S. 171; *Flint v. Stone Tracy Co.,* 220 U. S. 107; *Mills v. Lowell,* 178 Massachusetts, 459; *Lehigh Valley R. R. v. Pennsylvania,* 145 U. S. 192; *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68; *Phila. S. S. Co. v. Pennsylvania,* 122 U. S. 326.

The tax does not deny to plaintiff in error the equal protection of the law, nor deprive it of its property without due process of law, and is not repugnant to the Fourteenth Amendment. *Davidson v. New Orleans,* 96 U. S. 97; *Merchants Bank v. Pennsylvania,* 167 U. S. 461; *Bell's Gap R. R. v. Pennsylvania,* 134 U. S. 232; *Coulter v. Louisville & Nashville R. R.,* 196 U. S. 599; *Savannah &c. R. R. v. Savannah,* 198 U. S. 392; *Met. St. R. R. v. New York,* 199 U. S. 1; *St. Louis &c. R. R. v. Davis,* 132

Fed. Rep. 629; *Barbier* v. *Connolly*, 113 U. S. 27; *Magoun* v. *Illinois Sav. Bank*, 170 U. S. 283; *Tennessee* v. *Whitworth*, 117 U. S. 129; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Baltic Min. Co.* v. *Massachusetts*, 231 U. S. 68; *Spencer* v. *Merchant*, 125 U. S. 345; *King* v. *Portland City*, 184 U. S. 61; *Carson* v. *Brockton*, 182 U. S. 398; *Williams* v. *Eggleston*, 170 U. S. 304.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

The validity of Act No. 112, and of the tax that, pursuant to its provisions, has been levied against plaintiff in error, is questioned on the ground of repugnancy to the commerce clause of the Constitution of the United States and the "due process" and "equal protection" clauses of the Fourteenth Amendment.

The act is entitled "An Act for an annual franchise tax on corporations doing business in the State of Arkansas," (Acts of Arkansas, 1911, p. 67). Its fourth, fifth, and sixth sections require each foreign corporation for profit doing business in the State, and owning or using a part or all of its capital or plant in the State, to pay "for the privilege of exercising its franchise in this State, one-twentieth of one per cent. each year thereafter upon the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this State." On the other hand, Act No. 251, approved May 4, 1911 (Acts of Arkansas, p. 233), is entitled "An Act to provide the manner of assessing for taxation the property of railroads, express, sleeping car, telegraph, telephone and pipe lines companies." By its second section the franchises (other than the right to be a corporation) of all railroad, express, telegraph, and telephone companies are declared to be

property for the purpose of taxation, and the values of such franchises are to be considered by the assessing officers when assessing the property of such corporations.

The Supreme Court of the State, in its opinion herein, after reciting the pertinent provisions of the state constitution, went on to say (106 Arkansas, 326): "Our court has held that a corporation owes its existence to the State, and the right to enjoy this privilege is a subject of taxation, and that upon the power of the legislature to impose such a tax there exists no restriction in our Constitution. In the case of a foreign corporation, the tax or license is paid for the privilege of exercising its corporate powers in the State. *Baker* v. *State*, 44 Arkansas, 138, and cases cited. . . . (p. 327): In the passage of the act in question [Act No. 112], no doubt the legislature had in mind the fact that the right or privilege to be or exist as a corporation, although a matter of value to the stockholders of the corporation, is not an asset of the corporation and transferable as such, and that its value can not, under ordinary rules, be ascertained for the purpose of taxation as property, but since it is a privilege or right granted by the State, a franchise tax may be imposed upon this right or privilege for the purpose of raising revenue. We think it plain, then, under our Constitution and decisions, that the act in question is valid unless it be held a burden upon interstate commerce." And, after citing certain decisions of this court bearing upon the latter question, the court proceeded (p. 329): "In the case at bar the gross receipts from all sources of the railway company have not been used as a means for ascertaining the value of the property in the State. By the express provision of Act No. 251, enacted for the purpose of providing the manner for assessing for taxation the property of railroad companies, the right to be or exist as a corporation was expressly excluded from the items which go to make up the value of the property of the corporation. As we have

already seen, the right or privilege to be or exist as a
corporation is the subject of taxation, and this right or
privilege is not considered in fixing the value of the
property of corporations under Act No. 251, the general
tax act. Our State has fixed a franchise tax based solely
'upon the proportion of outstanding capital stock of
corporations represented by property owned and used in
business transacted in this State.' The act in question
seems to have been drawn with great care and with the
evident purpose to exclude any contention that the tax
was made upon interstate commerce. The framers of the
act evidently considered the cases of *Ludwig* v. *West. Un.
Tel. Co.*, 216 U. S. 146, and *West. Un. Tel. Co.* v. *Kansas*,
216 U. S. 1, and therefore intended to pass an act that
would not be contrary to the principles therein announced.
We think it has done so. It will be noted in the *Ludwig
Case*, the statute requires a foreign corporation engaged in
interstate commerce to pay as a license tax for doing
intra-state business, a given amount on its capital stock
whether employed within the State or elsewhere, and the
court held that on the authority of the *Kansas Case*, the
statute in question was unconstitutional and void because
it directly burdened interstate commerce and imposed
a tax on property beyond the jurisdiction of the
State."

Upon the mere question of construction we are of course
concluded by the decision of the state court of last resort.
But when the question is whether a tax imposed by a
State deprives a party of rights secured by the Federal
Constitution, the decision is not dependent upon the form
in which the taxing scheme is cast, nor upon the char-
acterization of that scheme as adopted by the state court.
We must regard the substance, rather than the form, and
the controlling test is to be found in the operation and
effect of the law as applied and enforced by the State.
*Henderson* v. *Mayor of N. Y.*, 92 U. S. 259, 268; *Williams*

v. *Mississippi,* 170 U. S. 213, 225; *Smith* v. *St. Louis & Southwestern Ry.,* 181 U. S. 248, 257; *Stockard* v. *Morgan,* 185 U. S. 27, 37; *Reid* v. *Colorado,* 187 U. S. 137, 151; *Galveston, Harrisburg &c. Ry.* v. *Texas,* 210 U. S. 217, 227; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 27; *Ludwig* v. *West. Un. Tel. Co.,* 216 U. S. 146, 162; *Sioux Remedy Co.* v. *Cope,* decided November 30, 1914, *ante,* p. 197.

We therefore accept the construction of Act No. 112, that we have quoted from the opinion of the state court, which is, in short, that it imposes an annual franchise tax upon the right to exist as a corporation or to exercise corporate powers within the State, the amount of the tax being fixed solely by reference to the property of the corporation that is within the State and used in business transacted within the State, and excluding any imposition upon or interference with interstate commerce. By this we understand that the franchise of a foreign corporation that is intended to be taxed is that which relates solely to intra-state business; and this exposition of Act No. 112 brings it into harmony with Act No. 87 (quoted in the prefatory statement) which requires foreign corporations to pay initial fees only for the privilege of doing intra-state business; and renders it harmonious, also, with Act No. 251, under which the franchise of corporate existence is excluded from the assessment.

And we proceed to consider whether, in view of the construction thus placed upon Act No. 112, the franchise tax imposed upon plaintiff in error pursuant to its terms runs counter to the commerce clause or the Fourteenth Amendment.

The tax, as will be observed, is not in any wise based upon the receipts of the railroad company from interstate commerce, either taken alone or in connection with the receipts from its intra-state business. Since, therefore, the amount of the imposition is not made to fluctuate with the

volume or the value of the business done, we are relieved
from those difficulties that arise where state taxes are
based upon the earnings of interstate carriers, as in *Maine*
v. *Grand Trunk Ry.*, 142 U. S. 217; *Wisconsin & Michi-
gan Ry.* v. *Powers*, 191 U. S. 379; *Galveston, Harrisburg
& San Antonio Ry.* v. *Texas*, 210 U. S. 217; *Oklahoma*
v. *Wells, Fargo & Co.*, 223 U. S. 298; and *U. S. Express
Co.* v. *Minnesota*, 223 U. S. 335.

    And we have no hesitation in overruling the contention
that the tax is repugnant to the "due process" clause on
the ground of being in effect based on property located
beyond the limits of the State, as in *Western Union Tel.
Co.* v. *Kansas*, 216 U. S. 1, 30; and in *Ludwig* v. *West. Un.
Tel. Co.*, 216 U. S. 146, 162; for this tax is measured by
reference to property situate wholly within the confines of
the State.

    So far as the commerce clause is concerned, it seems to
us that the principles upon whose application the present
decision must depend are those set forth in *Postal Tel.
Cable Co.* v. *Adams*, 155 U. S. 688, 695, where the court,
by Mr. Chief Justice Fuller, said: "It is settled that
where by way of duties laid on the transportation of the
subjects of interstate commerce, or on the receipts derived
therefrom, or on the occupation or business of carrying it
on, a tax is levied by a State on interstate commerce, such
taxation amounts to a regulation of such commerce and
cannot be sustained. But property in a State belonging to
a corporation, whether foreign or domestic, engaged in
foreign or interstate commerce, may be taxed, or a tax
may be imposed on the corporation on account of its
property within a State, and may take the form of a tax
for the privilege of exercising its franchises within the
State, if the ascertainment of the amount is made de-
pendent in fact on the value of its property situated within
the State (the exaction, therefore, not being susceptible of
exceeding the sum which might be leviable directly

thereon), and if payment be not made a condition prec-
edent to the right to carry on the business, but its en-
forcement left to the ordinary means devised for the col-
lection of taxes."

So, in *Atlantic &c. Tel. Co.* v. *Philadelphia*, 190 U. S.
160, the court, reviewing numerous previous cases, laid
down certain propositions as well-established, and among
them the following: (a) No State can compel a party,
individual or corporation, to pay for the privilege of
engaging in interstate commerce; (b) This immunity does
not prevent a State from imposing ordinary property taxes
upon property having a situs within its territory, although
it be employed in interstate commerce; and (c) The
franchise of a corporation, although that franchise is the
business of interstate commerce, is, as a part of its prop-
erty, subject to state taxation, provided at least the
franchise is not derived from the United States.

Applying these principles, we have no difficulty in
sustaining the tax in question as a legitimate imposition
upon a foreign corporation with respect to its exercise of
the privilege of transacting intrastate business in corpo-
rate form, the tax being based upon the amount and value
of its property within the State. It is fixed at a definite
percentage ($\frac{1}{20}$ of one per cent.) of "the proportion of the
outstanding capital stock of the corporation represented
by property owned and used in business transacted in
this State," and the Act provides machinery for ascer-
taining the market value of the entire capital stock and
striking a proportion between the value of the property
owned and used by the corporation in the State and that
owned and used by it outside of the State. In its essence
the tax is not distinguishable from that which was sus-
tained by this court in *Western Union Tel. Co.* v. *Mas-
sachusetts*, 125 U. S. 530, and in another case between
the same parties, 141 U. S. 40. See also *Pittsburgh &c.
Ry.* v. *Backus*, 154 U. S. 421, 430, 435; *Indianapolis &c.*

*R. R.* v. *Backus,* 154 U. S. 438; *Cleveland &c. Ry.* v. *Backus,* 154 U. S. 439, 444, 445; *Western Union Telegraph Co.* v. *Taggart,* 163 U. S. 1, 18; *Western Union Tel. Co.* v. *Gottlieb,* 190 U. S. 412, 424.

It is insisted that Act No. 112, as construed by the state court, in connection with Act No. 251, subjects the property of plaintiff in error to double taxation, and that this contravenes the constitutional guaranties respecting due process of law and the equal protection of the laws. No attempt is made to show that the classification of corporations adopted in Act No. 112 is not a reasonable one, or that in any respect corporations of the class to which plaintiff in error belongs are discriminated against in favor of domestic corporations, as was the case in *Southern Railway Co.* v. *Greene,* 216 U. S. 400. Under the first three sections of this act, each corporation organized and doing business under the laws of the State for profit is required to pay a tax of one-twentieth of one per cent. upon "that part of its subscribed or issued and outstanding capital employed in Arkansas," with an exception not now pertinent; whereas by the next three sections each foreign corporation for profit doing business in the State and owning or using a part or all of its capital or plant in the State is required to pay according to the same percentage "upon the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this State." It is not contended that there is here any substantial discrimination. The gist of the criticism seems to be that the two acts in question subject the property of plaintiff in error, as well as that of all other corporations that are within the operation of those Acts, to double taxation, and that this is a denial of "equal protection" in favor of other classes of taxpayers. Reference is made to an extract from the opinion in the *Adams Case* (155 U. S. 696) where the court said: "Doubtless, no State could add to the taxation of prop-

erty according to the rule of ordinary property taxation, the burden of a license or other tax on the privilege of using, constructing, or operating an instrumentality of interstate or international commerce or for the carrying on of such commerce; but the value of property results from the use to which it is put and varies with the profitableness of that use, and by whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution. *Cleveland &c. Ry.* v. *Backus,* 154 U. S. 439, 445." This, however, does not mean, as is contended, that because of the Fourteenth Amendment a State may not, in addition to the imposition of an ordinary property tax upon an instrumentality of interstate or international commerce, impose a franchise tax ascertained by reference to the property of the corporation within the State, including that employed in interstate commerce. The court was dealing only with the Commerce Clause, and the language quoted means that, by whatever name the tax or taxes may be called that are fixed by reference to the value of the property, if they are not imposed because of its use in interstate or foreign commerce, and if they amount to no more than would be legitimate as an ordinary tax upon the property, valued with reference to the use in which it is employed, they are not open to attack; and that it is permissible to value the property at what it is worth in view of its use in interstate commerce, so long as no added burden is imposed as a condition of such use. This is evident from a reading of the context and from the reference made to the opinion in 154 U. S. at p. 445.

Nothing in the Fourteenth Amendment imposes any iron-clad rule upon the States with respect to their internal taxation, or prevents them from imposing double taxation, or any other form of unequal taxation, so long as the in-

equality is not based upon arbitrary distinctions. *Davidson* v. *New Orleans*, 96 U. S. 97, 105, 106; *Bell's Gap R. R.* v. *Pennsylvania*, 134 U. S. 232, 237; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339, 351; *Adams Express Co.*, v. *Ohio*, 165 U. S. 194, 228; *Merchants Bank* v. *Pennsylvania*, 167 U. S. 461, 464; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 295; *Armour Packing Co.* v. *Lacy*, 200 U. S. 226, 235; *Michigan Central R. R.* v. *Powers*, 201 U. S. 245, 293.

Thus far we have dealt only with the authority of the State to levy a tax of this character, and with the mode in which the amount of the tax is ascertained. But the case presents another question that is more serious. By § 20 of Act No. 112 it is enacted: "In case any corporation shall fail to pay the franchise tax prescribed by this Act when it becomes due during the term of said certificate, the said tax commission shall cancel said certificate, and said corporation shall forfeit its right to do business in this State, in addition to the other penalties prescribed in this Act."

If this must needs be construed to mean that for non-payment of the franchise tax a foreign railroad corporation engaged in business as a common carrier of intra-state and interstate commerce is to forfeit its right to do business in the State, not only with respect to intra-state but also with respect to interstate commerce, the effect would be to impose a condition upon its right to transact interstate commerce, and the act would be invalid as amounting in effect to a regulation of that commerce; unless, indeed, § 20 could be treated as separable. This result would follow from the principles laid down in *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530, 554; *Leloup* v. *Port of Mobile*, 127 U. S. 640, 644, 647; *Western Union Telegraph Co.* v. *Alabama*, 132 U. S. 472, 477; *Allen* v. *Pullman Co.*, 191 U. S. 171, 179; and many other cases.

But the state court has not as yet construed the section

as calling for the forfeiture of the privilege of doing interstate business in the event of non-payment of the franchise tax; nor is the State here insisting upon such a construction. The present is an ordinary action to collect the tax as a debt, and not to forfeit the franchise for its non-payment. *Non constat* but that the state court will hold, when confronted with the question, that the franchise to be forfeited pursuant to § 20 is confined to intra-state commerce. Such a construction is clearly foreshadowed by what the court has in this case held with respect to the general purpose of the act. And in exercising the jurisdiction conferred by § 237, Jud. Code, it is proper for this court to wait until the state court has adopted a construction of the statute under attack, rather than to assume in advance that such a construction will be adopted as to render the law repugnant to the Federal Constitution. *Bachtel* v. *Wilson*, 204 U. S. 36, 40; *Adams* v. *Russell*, 229 U. S. 353, 360; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 546. And see *Ohio Tax Cases*, 232 U. S. 576, 591. At present, therefore, we have merely to consider whether § 20 so clearly requires a forfeiture of the interstate franchise for non-payment of the tax in question that it is not reasonable to anticipate that the state court will put another construction upon it. And in doing this we ought not to indulge the presumption either that the legislature intended to exceed the limits imposed upon state action by the Federal Constitution, or that the courts of the State will so interpret the legislation as to lead to that result. No canon of construction is better established or more universally observed than this, that if a statute will bear two constructions, one within and the other beyond the constitutional power of the law-making body, the courts should adopt that which is consistent with the Constitution, because it is to be presumed that the legislature intended to act within the scope of its authority. *United States* v. *Coombs*, 12 Pet. 72, 76; *Grenada County Super-*

*visors* v. *Brogden,* 112 U. S. 261, 269; *The Japanese Immigrant Case,* 189 U. S. 86, 101. It hardly needs to be said that the Supreme Court of Arkansas recognizes and applies this fundamental rule of construction. *State* v. *Lancashire Ins. Co.,* 66 Arkansas, 466, 477; *Waterman* v. *Hawkins,* 75 Arkansas, 120, 126; *State* v. *Moore,* 76 Arkansas, 197, 201.

It does not seem to us that § 20, when taken in connection with the context, requires to be so construed as to interfere with interstate commerce. The taxing provisions of the act apply to all corporations doing business in the State for profit, whether organized under its laws, or under the laws of other States, or of foreign countries, and entirely irrespective of the question whether they are engaged in commerce. Therefore it was natural that, in such a provision as is contained in § 20, language having upon its face a general scope should be adopted; but it need not be indiscriminately applied to all the several kinds of corporations that are subject to the act. The forfeiture in terms is of "the right of such corporation to do business in this State." This does not necessarily include the right to transact business that is done partly within and partly without the State. The section does not call for an annulment of the charter. That topic is covered by § 15 of the same act, which applies, however, only to corporations organized under the laws of Arkansas or of foreign countries, and not to corporations of other States, to which class plaintiff in error belongs.

In view of all these considerations, we ought to assume, until the State, through its judicial or administrative officers, places a different construction upon the act, that § 20 will be limited in its operation to forfeiting for non-payment of the franchise tax only the privilege of doing intrastate business; or else that the section, being void for unconstitutionality, will be treated as severable from the other provisions of the act. Under either view it is ob-

vious, from what has been already said, that the tax does not amount to a regulation of or a burden upon interstate commerce.

*Judgment affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.