THE STATE ex rel. WABASH RAILWAY COMPANY, Appellant, v. R. D. WILLIAMS et al., as Members of STATE TAX COMMISSION.

In Banc, October 1, 1920.

1. **TAXATION: Franchise Tax: Interstate and Intrastate Commerce.** Property in Missouri belonging to a corporation, whether foreign or domestic, engaged in interstate and intrastate commerce, may be taxed, and the tax may be imposed on the corporation on account of its property within the State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount of the tax is made dependent upon the value of its property situate within the State.

2. ————: ————: **On Property Within State: In Proportion to Interstate and Intrastate Business.** Under the Franchise Tax Act of 1917 (Laws 1917, p. 237), declaring that "every corporation, not organized under the laws of this State, shall pay an annual franchise tax to the State of Missouri equal to three-fortieths of one per cent of the par value of its capital stock and surplus employed in business in this State, and for the purposes of this act such corporation shall be deemed to have employed in this State that proportion of its entire capital stock and surplus that its property and assets in this State bears to all its property and assets wherever located," the right formula is to simply find what percentage of the foreign corporation's entire assets is located in this State, even though its assets located in this State are used in both interstate and intrastate commerce; and to use the full value of its Missouri assets in ascertaining the amount of tax it should pay, is not a laying of a tax on interstate commerce in violation of Section 8 of Article II of the Constitution of the United States, although said Missouri assets are used both in interstate and intrastate business.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*N. S. Brown* and *L. H. Strasser* for appellant.

(1) The franchise of a foreign corporation to carry on its interstate business in this State cannot be taxed by the State, either directly or indirectly. Western Union Co. v. Kansas, 216 U. S. 1; Galveston Railroad v. Texas, 210 U. S. 217. (2) It is conceded that as to a foreign corporation doing business in this State, the State has the right to levy a franchise tax upon that proportion of its capital stock which is used in conducting its intrastate business in the State. St. Louis Railroad v. Arkansas, 235 U. S. 350; Kansas City Railroad v. Botkins, 240 U. S. 227. But the act of the State Tax Commission in determining that the amount of appellant's taxes should be computed upon that proportion of appellant's outstanding capital stock which the value of all its property in this State bears to the value of all its property wherever located, is erroneous and void, because is is admitted that all of appellant's property in this State is used by it in carring on both interstate and intrastate commerce. Western Union Co. v. Kansas, supra; Lusk v. Kansas, 240 U. S. 236.

*Frank W. McAllister,* Attorney-General, and *John T. Gose,* Assistant Attorney-General, for respondent.

(1) It is now firmly settled, upon principle and authority, that the State, in its imposition of a tax upon property within its jurisdiction, is entitled to tax such property at its value as part of a going concern, and no deducted from such value is required because such property is also used in interstate commerce. St. Louis v. Arkansas, 235 U. S. 350, 367; Adams Express Co. v. Ohio, 165 U. S. 194; Adams Express Co. v. Kentucky,

166 U. S. 171; Fargo v. Hart, 193 U. S. 490, 499; Wisconsin v. Powers, 191 U. S. 379; Pullman Palace Car Co. v. Pennsylvania, 141 U. S. 18; Galveston v. Texas, 210 U. S. 225, 227. (2) By so much the more, then, is the State at liberty to select as a measure of a franchise tax for the privilege of doing intrastate business, the property within its jurisdiction, even though such property be used in part in interstate commerce. St. Louis v. Arkansas, 235 U. S. 364, 367; Atlantic v. Philadelphia, 190 U. S. 160; Maine v. Grand Trunk, 142 U. S. 217; Baltic v. Massachusetts, 231 U. S. 68, 83; Provident Inst. v. Massachusetts, 6 Wall. 611; Flint v. Stone Tracy Co., 220 U. S. 162, 165; Western Union v. Attorney-General, 125 U. S. 530, 141 U. S. 40; State ex inf. v. Merchants Exchange, 269 Mo. 365; Postal Tel. Co. v. Adams, 165 U. S. 688; Home Ins. Co. v. New-York, 134 U. S. 594.

WILLIAMS, J.—This is a mandamus proceeding instituted in the Circuit Court of Cole County, whereby relator seeks to compel the members of the State Tax Commission to assess relator's franchise tax in accordance with the principles of a certain formula hereinafter more fully explained. The trial court sustained a demurrer to the petition and, relator refusing to plead further, the court entered judgment in favor of respondents. Thereupon relator duly appealed to this court. The Franchise Tax Act of 1917 (Laws 1917, p. 237) provides in part as follows:

"Every corporation, not organized under the laws of this State, and engaged in business in this State, shall pay an annual franchise tax to the State of Missouri equal to three-fortieths of one per cent of the par value of its capital stock and surplus employed in business in this State, and for the purposes of this act such corporation shall be deemed to have employed in this State that portion of its entire capital stock and surplus that its

property and assets in this State bears to all its property and assets whereever located."

The petition is quite lengthy. We do not deem that it is necessary to copy the same in full here.

The following quoted portions of the petition, together with comments on certain portions not quoted, will, we think, disclose the pleadings sufficiently for an understanding of the case.

It is alleged: "That relator owns and operates within this State more than six hundred miles of railroad, consisting of mainline tracks, sidings, turnouts, depots, station grounds, terminals and terminal facilities; that said properties of relator are assessed for taxation under the general laws of this State. That upon said line of railroad relator conducts its business as a common carrier by railroad in the transportation of property and passengers in both interstate and intrastate commerce; that all of said properties in this State are used in intrastate commerce, and also used in interstate commerce, and no part thereof is exclusively used in either intrastate or interstate commerce."

The petition alleges that relator duly made its report to the respondents showing that the market value of all its property and assets in this State was $14,039,641; that the market value of its property and assets without the State was $81,186,709; that the par value of its total paid up capital stock was $139,492,536.97; that of its entire business transacted in the State of Missouri for the year ending December 31, 1917, 73.34 per cent was interstate business and 26.66 per cent was intrastate business.

The petition further alleges:

"That in determining the amount of the franchise tax required to be paid by relator under the said Franchise Tax Act, it was the duty of said Tax Commission to determine and take into account, in the manner provided by said act, only that proportion of the clear market value of all its property and assets in this State

which was used in the conduct of the intrastate business of relator in this State during the calendar year ending December 31, 1917.

"That the amount of the franchise tax required to be paid by relator when measured by the provisions of said act as applied to that proportion of the clear market value of all the property and assets of relator in this State which was used in the conduct of its intrastate business in this State during the calendar year ending December 31, 1917, was and is $4,082.07, which said sum is found by apportioning the clear market value of all the property and assets of relator in this State on the percentage relation which its intrastate business in this State bears to all of its business herein. . . .

"And relator avers, on information and belief, that the said predecessors of respondents in determining the amount of tax which relator is required to pay under the provisions of said act, took the clear market value of all the property and assets of relator within this State to be the sum of $14,039,641, and the clear market value of the property and assets of relator without this State to be $81,186,709, and ascertained that the clear market value of all the property and assets of relator within this State was 14.743 per cent. of the clear market value of all the property and assets of relator without the State, and applied this percentage to the par value of the outstanding capital stock of relator, $138,492,536.97, thereby ascertaining that the proportion of the entire capital stock and surplus employed by relator in the conduct of all its business in this State was $20,417,954.72, to which last-named sum was applied the rate of taxation, to-wit, three-fortieths of one per cent, which gives the sum of $15,313.50, or the amount which the said predecessors of respondents wrongfully reported to the State Auditor as the amount of the tax that relator is liable to pay under the provisions of said Franchise Tax Act. . . .

"That the construction so given to the provisions of said Franchise Tax Act by the said predecessors of

respondents as applied to the facts in relation to the business and the value of the property and assets of relator in this State, renders the provisions of said act unconstitutional and void, because

"(a) It attempts thereby to assess a tax upon the franchise of relator to do an interstate business in this State in violation of the provisions of Section 8 of Article I of the Constitution of the United States.

"(b) It thereby deprives relator of its property without due process of law, and denies the relator the equal protection of the laws, in violation of Article XIV of he Amendmens to the Constitution of the United States."

The petition alleges that relator is without other adequate remedy and prays that respondents be directed "to correctly determine the proportion of the capital stock and surplus of relator employed in the business in this State, by ascertaining (1) the value of the property and assets of relator devoted to its intrastate business in this State, and (2) that proportion of relator's entire capital stock and surplus that its property and assets devoted to its intrastate business in this State bears to the value of all its property and assets wherever located; and from the facts so ascertained to determine the amount of the tax relator is liable to pay under the provisions of said Franchise Tax Act, and make a corrected or amended report of the same to the State Auditor, all in accordance with the true meaning of the provisions of said act, or to show cause at some early date to be named by this court, why they have not done so."

It stands admitted in this case that the relator corporation owns property and assets in the State of Missouri of the market value of $14,039,641; that all of said property is used for both intrastate and interstate commerce, and that none of it is used exclusively for either.

The Franchise Tax Act of 1917, supra, provides that foreign corporations doing business in this State shall

pay an annual franchise tax to the State equal to three-fortieths of one per cent of the par value of its capital stock and surplus employed in business in this State and "for the purpose of this act such corporation shall be deemed to have employed in this State that proportion of its entire capital stock and surplus that its *property and assets in this State bears to all its property and assets wherever located.*"

The respondents in determining the amount of re-lator's franchise tax for the year 1918 applied the above formula by first finding what percentage of relator's entire assets was located in this State.

Relator contends that, since its Missouri assets are used in interstate as well as intrastate business, to use the full value of its Missouri assets in the above formula would in effect violate Article II, Section 8, of the Federal Constitution, in that it would amount to the levying of a tax on interstate commerce and would also violate the Fourteenth Amendment of the Federal Constitution.

After a careful consideration of relator's contention we are of the opinion that it is not sound and should not be permitted to prevail. We agree with the learned Attorney-General in his assertion that the principle here involved has been squarely ruled against the contention of relator by the Supreme Court of the United States in the case of St. Louis Southwestern Railway Company v. Arkansas, 235 U. S. 350, in passing upon the validity of the Arkansas Franchise Tax Law.

In that case Mr. Justice PITNEY, speaking for the court, said at page 363:

"The tax, as will be observed, is not in any wise based upon the receipts of the railroad company from interstate commerce, either taken alone or in connection with the receipts from its intrastate business. Since, therefore, the amount of the imposition is not made to fluctuate with the volume or the value of the business done, we are relieved from those difficulties that arise where state taxes are based upon the earnings of inter-

state carriers, as in Maine v. Grand Trunk Ry., 142 U. S. 217; Wisconsin & Michigan Ry. v. Powers, 191 U. S. 379; Galveston, Harrisburg & San Antonio Ry. v. Texas, 210 U. S. 217; Oklahoma v. Wells, Fargo & Co., 223 U. S. 298; and U. S. Express Co. v. Minnesota, 223 U. S. 335.

"And we have no hesitation in overruling the contention that the tax is repugnant to the 'due process' clause on the ground of being in effect based on property located beyond the limits of the State, as in Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30; and in Ludwig v. West. Un. Tel. Co., 216 U. S. 146, 162; for this tax is measured by reference to property situate wholly within the confines of the State.

"So far as the commerce clause is concerned, it seems to us that the principles upon whose application the present decision must depend are those set forth in Postal Tel. Cable Co. v. Adams, 155 U. S. 688, 695, where the court, by Mr. Chief Justice FULLER, said: 'It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes.'

"So in Atlantic Tel. Co. v. Philadelphia, 190 U. S. 160, the court, reviewing numerous previous cases, laid

down certain propositions as well-established, and among them the following: (a) No State can compel a party, individual or corporation, to pay for the privilege of engaging in interstate commerce; (b) This immunity does not prevent a State from imposing ordinary property taxes upon property having a *situs* within its territory, although it be employed in interstate commerce; and (c) The franchise of a corporation, although that franchise is the business of interstate commerce, is, as a part of its property, subject to state taxation, provided at least the franchise is not derived from the United States.

"Applying these principles, we have no difficulty in sustaining the tax in question as a legitimate imposition upon a foreign corporation with respect to its exercise of the privilege of transacting intrastate business in corporate form, the tax being based upon the amount and value of its property within the State. It is fixed at a definite percentage (one-twentieth of one per cent) of 'the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this State,' and the act provides machinery for ascertaining the market value of the entire capital stock and striking a proportion between the value of the property owned and used by the corporation in the State and that owned and used by it outside of the State. In its essence the tax is not distinguishable from that which was sustained by this court in Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, and in another case between the same parties, 141 U. S. 40."

Relator places its chief reliance upon the case of Western Union Telegraph Company v. Kansas, 216 U. S. 1. We are of the opinion that the rule announced in the above case is not applicable to the facts of this case. In the Western Union case the law was held invalid because it undertook to levy a tax on property beyond the borders of the state levying the tax. We do not have a similar situation involved here.

For the reasons stated in the case of St. Louis Southwestern Railway Company v. Arkansas, supra, the judgment of the trial court is affirmed. *Walker, C. J., Blair, Graves, Goode* and *Williamson, JJ.,* concur; *Woodson, J.,* absent.