THE STATE EX REL. MISSOURI PACIFIC RAILROAD COMPANY v. C. M. DANUSER ET AL., Members of State Tax Commission; L. D. THOMPSON, State Auditor, and C. EUGENE STEPHENS, State Treasurer.—6 S. W. (2d) 907.

Court en Banc, April 9, 1928.

*Edwin J. White, Otto & Potter* and *James F. Green* for relator.

*North T. Gentry,* Attorney-General, and *Walter E. Sloat,* Special Assistant Attorney-General, for respondents.

WALKER, C. J.—This is an original proceeding by certiorari to quash the proceedings of the State Tax Commission and the records of the officers named, in the assessment of certain franchise taxes against the railroad company for the year 1927.

The statute authorizing the collection of a corporation franchise tax was first enacted in 1917, Laws 1917, page 237. It underwent several amendments not necessary to be noted here; and as incorporated in the Revised Statutes of 1919 (Chap. 20, Art. I), the sections relative to the tax are 9836, 9837, 9838, 9839, 9840, 9841, 9843 and 9845. These sections were repealed and new sections, with like numbers, were enacted in 1921, Laws 1921, First Extra Session, pages 121-126, except as to the title to the initial act. It is with

this statute·we are concerned, in the determination of the matter in controversy.

It is conceded that the respondents' statement of the facts correctly submits the issues. The principal contention is in regard to the method to be used in ascertaining the basis for computing the tax. The relator contends that it should be assessed on the proportionate part of its capital stock, surplus and undivided profits employed in Missouri, without taking into account its liabilities.

The respondents contend that the tax should be assessed on the proportionate part of the relator's capital stock, surplus and undivided profits employed in Missouri, plus its liabilities; or as stated differently by respondents, "the property of the relator used in determining the tax should include its total assets, less deductions held by respondents not taxable." In conformity with the statute, in question, the relator filed its report with the State Tax Commission for the year ending December 31, 1926, as follows:

"Paid up capital stock _____$154,639,600.00
Surplus and undivided profits _____ 50,082,183.36
Total surplus and undivided profits _____ 204,721,783.37
Liabilities, less capital stock and surplus __ 359,441,211.37"

It is the contention of the relator:

(1) That the Franchise Tax Law is invalid in that the title to the initial act in 1917 did not conform to the requirements of the State Constitution.

(2) That the Franchise Tax Law constitutes a burden on interstate commerce.

(3) That subsequent to the decision of this court in State ex rel. Marquette Co. v. State Tax Commission, 282 Mo. 213, the Legislature amended the Franchise Tax Law to require the return for taxation "of the amount of liabilities."

(4) That the word "surplus" as used in this law means that the debts and liabilities should be deducted from the gross assets and earnings to ascertain the amount of relator's property subject to the tax.

The title to the Act of 1917 is as follows:

"AN ACT requiring domestic and foreign corporations doing business in this State to pay an annual franchise tax; *providing the method of procedure for ascertaining the amount thereof and for enforcing collection thereof;* establishing a lien in support thereof; prescribing the duties of the State Tax Commission or of the State Board of Equalization; the State Auditor; the State Treasurer and other officers in connection therewith and prescribing the penalties and forfeitures for violations." [Laws 1917, p. 237.] Italics ours.

I. Relator's first contention is that the title to the act is in violation of Section 28, Article IV, of the State Constitution, in that

it does not designate the portions of the capital stock and surplus of corporations on which the tax is to be laid. This contention misconceives the purpose of the constitutional provision, which is to require a title to present in a clear and comprehensive manner the purpose of the act, and in so doing it is not necessary to enter into details, if those omitted are germane to the principal features of the act. Under this rule, if as at bar, the act has reference to only one subject and if the title clearly indicates the same, the details looking to the enforcement of the act need not be set forth in the title. [State ex inf. Barrett, ex rel. Bradshaw v. Hedrick, 294 Mo. 21, 241 S. W. 402; State ex inf. Barrett v. Imhoff, 291 Mo. 603, 238 S. W. 122.]

As we said in effect in Coca Cola Bottling Co. v. Mosby, 289 Mo. 1. c. 472, 233 S. W. 446: "The State Constitution (Sec. 28, Art. 4) is read to little purpose if it be held to require that the title of an act must present the particularity of an itemized account or the minutiae of a chemical analysis. When the Constitution provides, therefore, that 'no bill . . . shall contain more than one subject which shall be clearly expressed in its title,' it simply means that the title shall indicate in an unmistakable manner the general contents of the act; it does not require, nor was it intended that it should descend into particulars, but that it will be sufficient if it defines the nature of the statute and thus inform the reader as to its purpose. The nature of this constitutional provision being thus understood, the tendency of the courts in numerous rulings has been to construe it liberally in aid of all well directed legislative power."

An apposite ruling which fits like a glove the facts in the instant case is that of State v. Mullinix, 301 Mo. 385, 390, 257 S. W. 121, in which the court said:

"The generality of a title will not affect its validity where it does not tend to cover up or obscure legislation which is in itself incongruous. A requisite to congruity is that the amendatory act shall pertain to and admit of being made a consistent part of the law to be amended. The disposition of the courts has always been to avoid thwarting the efficiency of the evident salutary effect of legislative action by a liberal interpretation of the constitutional provision. [Burge v. Railroad, 244 Mo. 76, 148 S. W. 925; Booth v. Scott, 205 S. W. (Mo.) 633.]"

The act at bar relates to but one subject, viz., the franchise tax required to be paid by corporations. The title makes a clear and comprehensive reference to the same; and provides a method of procedure for ascertaining the amount thereof and for enforcing its collection. In addition, reference is made to the duties of the Tax Commission, and that of the state officers charged with the duty of enforcing the law. All of these are congruous with the general purpose of the act.

Not only is this title in no wise vague, uncertain or misleading, but in addition to declaring the purpose of the act it is definitely indicative of the course to be pursued in the enforcement of the same. He who runs therefore may, upon an inspection of this title, not only readily divine the purpose of the act, but understand as well that it contains the particulars necessary to render its operation effective. Thus informed no one of average intelligence, lawyer or layman, can be held to be misled thereby. The object of the title therefore is, under the Constitution, fully met and the relator's contention is devoid of merit.

II. The contention is made that the act is a burden on interstate commerce. This court in State ex rel. Wabash Ry. Co. v. Williams, 284 Mo. 456, 224 S. W. 822, held that in using the full value of a railroad's Missouri assets, employed in both intrastate and interstate commerce, in determining the amount of the railroad's franchise tax, does not violate the Federal Constitution (Art. I, sec. 8) by laying a tax on interstate commerce.

As we held in State ex rel. Hagerman v. Electric Ry. Co., 279 Mo. 616, 629, 216 S. W. 763, while it is not within the power of the states to put a direct burden on interstate commerce, the exclusive regulation of which is granted to Congress, this provision does not prevent the assessment of property situated in the several states, because it is a part of a unified system which is appropriated to interstate commerce. "In such cases," as Judge BOND, speaking for the court in the Hagerman case, said, "the property 'may be taxed at its value as it is, in its organic relations, and not merely as a congeries of unrelated items; and taxes on such property have been sustained that took account of the augmentation of value from the commerce in which it was engaged' " (citing cases).

Upon an appeal of the Hagerman case to the Supreme Court of the United States, 256 U. S. 314, 318, 41 S. C. Rep. 288, that court, in affirming the ruling of the Supreme Court of Missouri, held that "while a State may not, in the guise of taxation, constitutionally compel a corporation to pay for the privilege of engaging in interstate commerce, yet this immunity does not prevent the State from imposing an ordinary property tax upon property having a *situs* within its territory and employed in interstate commerce." Having thus ruled in regard to a property tax the court further held, as especially applicable to the matter under consideration, that (p. 318) "even the franchise of a corporation, if not derived from the United States, although that franchise is the business of interstate commerce, is subject to state taxation as a part of its property."

In St. L. & S. F. Ry. Co. v. Middlekamp, 256 U. S. 226, Mr. Justice HOLMES, speaking for the court in regard to the act in question (p.

231), says: ''There is no contravention of the Commerce Clause. It is said that the value of the franchise taxed is derived partly from the fact that the corporation does interstate business, but that does not invalidate the tax'' (citing cases).

Further than this, the relator's contention that this act levies a tax on interstate commerce is held to be unsound in St. Louis So. West. Ry. Co. v. Arkansas, 235 U. S. 350. This ruling is cited with approval in State ex rel. Wabash Ry. Co. v. Williams, supra, to this effect: that the tax is not in any wise based upon the receipts of the railroad company from interstate commerce, either taken alone or in connection with the receipts of its intrastate business. Since, therefore, the amount of the imposition is not made to fluctuate with the volume of the value of the business done, we are relieved from those difficulties that arise where state taxes are based upon the earnings of interstate carriers, as in the cases cited in support of the foregoing (284 Mo. 1. c. 463).

In an able dissenting opinion by Mr. Justice Brandeis in Ozark Pipe Line Co. v. Monier, 266 U. S. 567, the entire range of United States court cases concerning the levying of a burden by taxation on interstate commerce are cited and discussed with a holding in harmony with the cases here reviewed.

III. The further contention is made that the Franchise Act of 1921 (Laws 1921, 1st Ex. Sess., pp. 121, 126), is invalid in that there is added to Section 9837 a provision, as Section 15, requiring corporations liable to such tax to report ''the amount of liabilities.'' How or in what manner this added section can affect the validity of the act we are unable, after a careful analysis of the contention, to determine. The added provision is not incongruous with others required to be made by corporations liable to the tax; and it is an essential addition to enable the Tax Commission to reach a proper estimate of the value of the franchise to be taxed.

Nor do we regard as rendering the act invalid the addition of Section 8 of the Act of 1921 (p. 126), otherwise designated as Section 9845, which requires: ''All insurance companies, building and loan associations, and other corporations, the fees of which are fixed at lump sums by this article, and all corporations which employ all their property and all their outstanding capital stock in this State, or which will report and pay the fees on all of its outstanding capital stock, whether employed in this State or not, shall not be required to set out in the report required by this article the value of its property within this State or without the State.'' This amendment could be held invalid with-

out affecting the structural validity or operative force of the remainder of the act.

The differentiation of the corporations named in the amendment and the consequent requirement as to the character of their reports to the Tax Commission is a reasonable one in view of the difference between their organization and those of other corporations within the purview of the act. No constitutional provision is violated in the addition of this section to the act, and the contention is without merit.

IV. The validity of the act is challenged on the ground that the burden imposed results in double taxation.

If the manner in which the levy is to be laid and the amount of the tax is to be estimated was indefinite, some difficulty might be encountered in determining whether this is a property or an excise tax. If the former, then the contention has merit and the applicability of the constitutional rules as to due process and the equal protection of the law are to be considered. If the latter, these rules are not governing and the validity of the act is not in this regard in question. The terms of the act, however, dissipate any doubt and remove any difficulty that might otherwise arise in its construction. It (Sec. 9836) provides unequivocally that the corporations, therein named, shall pay an annual franchise tax equal to one-twentieth of one per cent of the par value of their outstanding capital stock and surplus, etc. The franchise, therefore, is graded in proportion to the par value of the stock and the tax imposed is in the nature of an excise. Thus classified we have held in several cases that the act is not in the nature of a property tax and does not violate that clause of the State Constitution which declares that all property subject to taxation shall be taxed according to its value; nor does it violate the due-process provision of the State Constitution or the Fourteenth amendment of the Federal Constitution. As we held in State v. Freehold Investment Co., 305 Mo. 88, 264 S. W. 702, the violation of the State or the Federal Constitution by the terms of the franchise act (Laws 1921, 1st Ex. Sess. pp. 121-126), "is no longer an open question," (citing cases). The great weight of authority is to the effect that a franchise law which requires the tax to be levied as in the act in question, is not a property tax. A like ruling as to the constitutionality of the act was made in State ex rel. Wabash Ry. Co. v. Williams, 284 Mo. 456, 462, 224 S. W. 822. In State ex rel. Hagerman v. Elec. Ry. Co., 279 Mo. 625, 216 S. W. 763, in discussing the taxation of the use of a right of way over a bridge we held it was not double taxation.

While it is true that the interpretation given to the franchise act in the Marquette Hotel case, 282 Mo. 213, 221 S. W. 721, and the

Freehold Investment Co. case, supra, had reference to the law as it existed in 1917, this contention does not have weight as contradistinguishing the act as it then existed from its reenactment in 1921, so far as concerns the character of the legislation, or more concretely, the nature of the tax created. The manner of ascertaining the amount to· be levied then as now w'as the same. Under each statute the basis on which the tax was to be estimated was the "par value of the outstanding stock and surplus." This, under each enactment gave the law its excise character and eliminated any question as to double taxation. The Supreme Court of the United States so held in the Middlekamp case, 256 U. S. 226, 231, in construing the act at bar.

V. Under the well defined ruling of this court there is no room for cavil as to the meaning of the word "surplus" as used in the act. In the Marquette case, .supra, we held that the whole purpose of the act intended the word "surplus" to mean the difference between the amount of the outstanding capital stock of a wholly domestic corporation, such as the relator, and the amount of the assets of that corporation excluding its liabilities.

The contention of the relator is that the term surplus, as used in the franchise law, means the remainder after deducting debts and liabilities of a corporation from income and earnings. In the light of our ruling in the Marquette Hotel case, as above quoted, it is enough to say that the relator's interpretation of the term is incorrect. That indebtedness should be deducted from surplus assets for assessment purposes has never been the policy of taxation in this State. Neither a natural nor an artificial person is allowed under our present system to deduct indebtedness from assets before returning property for assessment for the purpose of taxation. To contend, therefore, that the Legislature intended to depart from the constitutional rule of equity and uniformity in the levying of a franchise tax and not otherwise, does not merit serious consideration. The fact that the relator is the owner of stock or perhaps has a controlling interest in other domestic corporations, is stressed as an evidence of double taxation. Aside from the legality of such holdings under its charter and the statutes limiting its creation, which we do not discuss, this fact remains, that the ownership in such stock constitutes but an addition to the assets of the relator; and as such is, of course, within the meaning and purpose of the act, intended to be returned for assessment as essential to the information of the Tax Commission in estimating the basis for the levying of the relator's franchise tax.

This act in all of its material features, from its enactment in 1917 to and including the present statute, has not only been subjected to the scrutiny of this court, but of the Supreme Court of the United

States, to determine its validity on constitutional and other grounds. In each instance its validity has been upheld with cogent reasoning.

There is no merit in this proceeding and the writ is quashed. All concur, *Ragland, J.,* in the result; *White* and *Graves, JJ.,* not sitting.