## THE STATE ex rel. MARQUETTE HOTEL INVESTMENT COMPANY v. STATE TAX COMMISSION.

### In Banc, April 18, 1920.

1. **FRANCHISE TAX: Surplus.** The word "surplus" as used in the Franchise Act of 1917, Laws 1917, p. 237, requiring a corporation to pay an annual franchise tax "equal to three-fortieths of one per cent of the par value of its outstanding capital stock and surplus," does not mean the excess of assets over liabilities other than stock liability, but means the excess of the gross assets over the total outstanding capital stock, and therefore the amount of the corporation's indebtedness is not to be considered in ascertaining the amount of the tax due. So that where the corporation's gross assets amount to $708,770.90, and its outstanding capital stock amounts to $350,000 and its indebtedness to $350,000, the corporation is taxable upon the total sum of $708,770.90, and not simply upon $358,770.90.

*Held*, by GRAVES, J., concurring, that Section 10 of said act, while apparently conflicting with Sections 1 and 2, is meaningless, and should therefore be ignored in an attempt to reach the meaning of the word "surplus" used in Section 1.

*Held*, by GOODE, J., dissenting, that the word "surplus" as used in said act, does not denote the entire assets of a corporation in excess of its capital stock, but denotes the excess of assets over liabilities; that the act is ambiguous, conflicting and difficult of interpretation, and is made so especially by Sec-

(213)

tion 10, which seems to relieve from the duty to report the value of property, within or without this State, "all corporations which employ all their property and all their outstanding capital stock in this State;" but Paragraph 10 of Section 2 requires a corporation to report "the amount of surplus and undivided profits" and Paragraph 14 of Section 2 requires it to report "the clear market value of its total capital stock, surplus, property and assets," and those words afford a strong reason for a conclusion that the word "surplus" used in Section 1 does not mean assets, but was used to mean what it is employed to mean in commercial circles, namely, the excess of assets over liabilities.

2. ——: ——: Legislative Intention. The cardinal rule of statutory construction is to ascertain the intention of the law-making body, and as far as possible to give effect to the intention expressed; and when that rule is observed, it is clear that the fundamental intention of the Legislature in requiring a corporation to pay a franchise tax equal to three-fortieths of one per cent "of the par value of its outstanding capital stock and surplus" was to levy the tax, first, upon the amount of its capital stock, and, second, upon any surplus property employed in its business in this State; in other words, the amount of property taxable is the amount used in its business, whether that be capital stock paid in or money borrowed. The tax is levied upon the corporation's right to do business, and the tax is imposed upon all the money or assets it employs in its business. By "surplus" the Legislature meant the difference between the outstanding capital stock of a domestic corporation and the amount of its assets, excluding liabilities of all kinds.
Held, by GOODE, J., dissenting, that the word "surplus" as used in the act means the excess of assets over liabilities.

3. ——: ——: Taxation Policy. No individual is allowed to deduct his indebtedness from the value of the property upon which he is required by the law to pay general taxes, and the same taxation policy inheres in the levying of a franchise tax, and is made compulsory by the constitutional provisions declaring that taxes shall be uniform and in proportion to the value of the property taxed (not in proportion to the value of the owner's interest therein). And the law does not extend to corporations a favor it denies to natural persons.

4. ——: ——: ——: Applies to Franchises. The constitutional provision requiring all property to "be taxed in proportion to its value" applies to franchises as well as to any other species of property; and it is not beyond the power of the Legislature to take the extent of the use of a franchise as a basis for computing a

State ex rel. v. State Tax Commission.

franchise tax. And that was the standard employed in the Franchise Tax Act of 1917, which requires a corporation to pay an annual franchise tax equal to three-fortieths of one per cent "of the par value of its outstanding capital stock and surplus;" it imposes a tax on the amount of money used by a corporation in its business in this State.

*Held*, by GOODE, J.; dissenting, that the word "surplus" used in the act means the same thing it is employed in commercial circles to mean, namely, the excess of assets over indebtedness.

## *Certiorari.*

WRIT QUASHED.

*Taylor, Chasnoff & Willson, E. T. Miller* and *Lyon & Swarts* for relator.

(1) The tax levied by the act is a franchise tax, and not a tax upon property. Laws Mo. 1917, pp. 237-242; Mo. Constitution, art. 10, secs. 3 and 4; State v. Stonewall Ins. Co., 89 Ala. 338; Southern Gum Co. v. Laylin, 64 N. E. 564; State v. Railroad, 45 Md. 361; Phoenix Carpet Co. v. State, 118 Ala. 143; People v. Home Ins. Co., 92 N. Y. 328; State ex rel. v. Schramm, 271 Mo. 223; People ex rel. v. Knight, 174 N. Y. 475. (2) By "par value of the outstanding capital stock" is meant the result obtained by multiplying the par value of a single share by the number of shares outstanding. By "surplus" is meant the excess of assets over all liabilities. People ex rel. v. Roberts, 39 N. Y. Supp. 448; First Nat. Bank v. Moon, 102 Kan. 334, L. R. A. 1818-C, 986; Fidelity Trust Co. v. Board of Equalization, 77 N. J. L. 128; Leather Mfgs. Natl. Bank v. Treat, 116 Fed. 774; People ex rel. v. Purdy, 146 N. Y. Supp. 646; Houston & T. C. Railroad v. McDonald, 148 S. W. 287; State v. Morristown Fire Assn., 23 N. J. L. 195; Anderson v. Trust Co., 241 Fed. 342; State ex rel. v. Utter, 34 N. J. L. 487; Lapsley v. Merchants Bank, 105 Mo. App. 98; Decker v. Diemer, 229 Mo. 296; So. Ins. Co. v. Milligan, 154 Ky. 216; Greeff v. Ins. Co., 160 N. Y. 19; State v. Yard,

42 N. J. L. 357; State v. Parker, 35 N. J. L. 575; Bank v. Tennessee, 161 U. S. 147; Cole, "Assets, Their Construction and Interpretation," pp. 70, 95 and 200; Century Dictionary. (3) The terms "par value of the outstanding capital stock" and "surplus" are to be taken as used in their ordinary and customary meaning, nothing appearing in the act to evidence a legislative intent to the contrary. State ex rel. v. Gorden, 66 Mo. 394; Kirby & Castle's Digest of the Statutes of Arkansas of 1916, sec. 8480; People ex rel. v. Roberts, 168 N. Y. 14; People ex rel. v. Roberts, 72 N. Y. Supp. 950. As friends of the court, Ball & Ryland and James E. Goodrich also filed briefs for relator; Judson, Green & Henry, filed briefs for St. Louis Chamber of Commerce; Barker, Botts, Parker & Garwood, W. R. Thurmond and Jesse Andrews filed briefs for Long-Bell Telephone Company; Samuel Mitchell filed briefs for Mercantile Trust Company of St. Louis; Fordyce, Holliday & White and Bennett Clark filed briefs for Liberty Bank of St. Louis; Jeffries & Corum filed briefs for Baden Bank, Chippewa Bank, Grand Avenue Bank and Union Station Trust Company, of St. Louis.

*Frank W. McAllister*, Attorney-General, *John T. Gose*, Assistant Attorney-General, and *Lewis H. Cook*, Special Assistant, for respondents.

(1) The spirit and purpose of a statute are paramount. "For as it has often been said that which is not within the spirit, though within the letter, of the statute, is not within the statute." State v. Railroad, 32 Fed. 724, 725, quoted in State ex inf. v. Railroad, 238 Mo. l. c. 613. See also Riddick v. Walsh, 15 Mo. 519; State ex rel. v. County Court, 41 Mo. 254; State ex rel. Ins. Co. v. King, 44 Mo. 283; State ex rel. v. Angert, 127 Mo. 462; Schawacker v. McLaughlin, 139 Mo. 342, 343; Kane v. Railroad, 112 Mo. 39; Keeney v. McVoy, 206 Mo. 68; St. Louis v. Christian Bros. College, 257 Mo. 552. It is elementary that statutes should be so reasonably construed as to give them their intended force and

effect. State ex rel. Vernero v. McQuillin, 246 Mo. 517; Curtis v. Sexton, 252 Mo. 221; State ex rel. St. Louis v. Railroad, 262 Mo. 720; State ex inf. v. Duncan, 265 Mo. 26; Johnston v. Ragan, 265 Mo. 420; State ex rel. v. Gordon, 266 Mo. 394; State ex rel. v. Drainage Dist., 271 Mo. 436. (2) All asets devoted to the corporate business constitute the measure of the tax upon the privilege. The term surplus, as used in connection with the oustanding capital stock, means the surplus, excess or overplus of assets devoted to the corporate business which is in excess of, and not represented by the par value of the oustanding capital stock. North American Petroleum Co. v. Hopkins, 181 Pac. 627. (3) The Legislature is not to be credited with an absurdity, nor with the intention of permitting a large class of corporations to bear an unjust share of the burden imposed by the franchise tax. "The effects and consequences of a proposed interpretation of a law should be considered in trying to ascertain the intention of the Legislature." State ex rel. Macklin v. Rombauer, 104 Mo. 619; Kane v. Railroad, 112 Mo. 34; Glaser v. Rothschild, 221 Mo. 210; Endlich on Interp. of Statutes, sec. 295; Cole v. Skrainka, 105 Mo. 310. The Legislature knew when it enacted the Franchise Tax, that there were a number of very large corporations which were licensed to do business in this State, but a part of whose capital stock had no par value. The Legislature knew that the term "surplus" as applied to such corporations was meaningless; that they could have no surplus in the sense of excess of assets over liabilities used in connection with capital stock. The Legislature is not to be charged with using a term which had no meaning as applied to a large number of corporations, nor with the intention to favor such corporations by using as a measure of the tax only that part of their assets which was represented by outstanding capital stock which had a par value.

WILLIAMSON, J.—This is a proceeding by writ of *certiorari* issuing out of this court, upon the petition of

the Marquette Hotel Investment Company against the State Tax Commission, to determine the amount of tax due from relator under the act commonly known as the Franchise Tax Act. [Laws of Missouri 1917, p. 237.] The relator, as required by the act above mentioned, filed its report with the State Tax Commission, showing assets of the amount of $708,770.90, and liabilities in the amount of $700,000, consisting of its capital stock, amounting to $350,000, and indebtedness amounting to $350,000, thus showing an excess of assets above capital stock and indebtedness in the sum of $8,770.90. Respondent construed the Act of 1917, supra, to mean that the tax of three-fortieths of one per cent, by that act assessed, should be caculated upon the basis of $708,770.90, and determined the amount of the tax due from relator to be $531.58. Relator contends that its indebtedness of $350,000 should be deducted from its total assets, leaving a balance of $358,770.90, and that amount of the tax due from it is, when computed on this balance, $269.08. This sum it has tendered to the State Treasurer. The foregoing facts are substantially the facts set out in relator's application for the writ of *certiorari,* and upon these facts the writ was issued.

The respondent demurred to the writ, on the ground that it did not state facts sufficient to constitute a cause of action against respondent, and because upon its face it showed that relator is not entitled to the relief prayed. The cause is submitted upon the issues thus made up.

The statute in question is denominated a franchise tax in the title, and in the first section of the act. In relator's brief, the first point made is that this is a "franchise tax and not a tax upon property:" Respondent in its brief states that it "readily agrees with relator that the franchise tax is not a property tax." Since the lawmaking body and the contending parties are agreed upon this point, we think we may safely assume that this is a franchise tax, and so dispose of relator's contention number one.

**Franchise Tax.**

The real difference between the parties here is embraced within a very narrow scope. Section 1 of the act supra, in so far as it relates to the matter here in issue, is as follows:

"Every corporation organized under the laws of this State shall . . , pay an annual franchise tax to the State of Missouri equal to three-fortieths of one per cent of the par value of its outstanding capital stock and surplus . . . "

**Surplus.**

There is no controversy between the parties to this action concerning the liability of the relator to pay the tax upon the amount of its outstanding capital stock, which is $350,000. The whole controversy hinges upon the interpretation to be placed upon the word "surplus" as used in the statute. Surplus *ex vi termini* implies an excess. Relator's contention is that, as used in this act, surplus means the excess of assets over liabilities other than stock liability. Respondent, on the other hand, contends that the surplus is the excess of the gross assets over the total outstanding capital stock, and that the amount of relator's indebtedness is an irrelevant circumstance. By respondent's reasoning, the tax should be based upon the total sum of $708,770.90. By relator's reasoning, the amount upon which the tax should be calculated is $358,770.90.

We are indebted to the diligence of counsel for relator for a large number of citations of cases in which "surplus" is defined. We have read all of these cases with interest, but, it must be confessed, with little profit. In each instance, the word as used in the case cited is obviously, and usually expressly, confined to the particular context in which it is used, and to the subject matter under discussion. No case cited is sufficiently analogous to be of much assistance. The result is that we are forced to turn to a study of this particular act, and to endeavor, as best we may, from its somewhat confused and cloudy phraseology, to ascertain what the real intention of the Legislature was. It goes without saying that the cardinal rule of statutory construction is to as-

certain the intention of the law-making body, and as far as possible to give effect to the intention expressed.

The ordinary meaning of the word "surplus," as found in the standard lexicons, is "that which remains when use or need is satisfied; excess; overplus." As defined in various decisions, surplus mean "the amount of the residue of the assets after the liabilities have been deducted" (Anderson v. Farmers' Loan & Trust Co., 141 Fed. 322, l. c. 327), or "the net assets over and above the liabilities" (People ex rel. v. Purdy, 146 N. Y. Supp. 646). A method of ascertaining the amount of the surplus is pointed out in Fidelity Trust Co. v. Board of Equalization, 77 N. J. Law, 128, l. c. 130, as follows: "In order to ascertain the capital and surplus, it is necessary to find the true value of the gross assets. From this must be deducted debts and liabilities. The remainder will be the value of the capital and surplus, if any." All of these authorities tend to support relator's contention.

In each instance above cited, however as well as in all others which have been called to our attention, the definition given or the method pointed out by which the surplus may be ascertained, is confined either in express terms, or by necessary implication, to the particular case and facts under consideration. We think it must be so confined in this instance.

It clearly appears, by reference to Sections 1 and 2, that the fundamental idea in the mind of the Legislature was that a corporation doing business wholly in this State should be taxed under the provisions of this act upon two things, first, upon the amount of its outstanding capital stock, regardless of the value of its assets, whether more or less than the amount of the outstanding capital stock, and, second, upon any surplus property employed in its business in this State. The tax is levied not upon the property itself, but upon the right of the corporation to transact business in this State. The references to the amount of the authorized capital stock and to the amount of the surplus

are made solely for the purpose of pointing out a
method of determining the amount of the tax. It
is, of course, obvious that a corporation may be au-
thorized to issue a very limited amount of capital stock,
and may, in fact, in the case of a domestic corporation,
have outstanding only one-half of the capital stock which
it is authorized to issue. But the amount of capital stock
outstanding is by no means the measure of the amount of
capital which the corporation may use in its business.
It commonly happens that upon the organization of a
corporation, all or so much of its capital stock as is re-
quired by law to be paid up, is paid up, and in addition
thereto a sum is contributed by the stockholders as a
means of establishing and reenforcing the credit of the
corporation. There is no limit to the amount which may
be so contributed. A corporation organized and au-
thorized to issue capital stock in an amount not exceed-
ing two thousand dollars may borrow and employ in its
business any sum whatever. The result is that a corpo-
ration with a minimum stock subscription may actually
employ huge sums of capital in its business. It might
well happen that no part of this total employed in busi-
ness, in excess of the amount of the outstanding capital
stock, would be surplus in the ordinary acceptation of
that term. If this excess were borrowed money, the
amount so borrowed would constitute a liability, but the
corporation would nevertheless be employing the amount
of that liability in business. The money so borrowed,
or the property purchased with that money, would be
*assets* of the corporation. The corporation would have
the right to use and actually would be using under its
franchise, not only the amount of its outstanding capital
stock, but all of the money so borrowed. This it has a
right to do, and it is that right which the General As-
sembly intended to tax by the enactment of the statute
here in question. If relator's theory is correct, and
all liabilities must first be deducted in order to ascertain
what the surplus is, or whether or not there is any sur-
plus, it would be an easy matter for a corporation prac-

tically to escape the tax levied by this law, and neverthe-less to enjoy all the benefits of a franchise to do business in this State with assets circumscribed only by the limits of its ability to borrow money or to contract debts. It cannot be supposed that the Legislature intended such a condition to exist. Neither can it be supposed that a possibility so obvious escaped the legislative attention. It necessarily follows that, in view of the language of Sections 1 and 2, and of the whole purpose of this act, as disclosed by the act itself, the Legislature must have intended the word surplus to mean the difference between the amount of the outstanding capital stock of a wholly domestic corporation, such as relator is, and the amount of the assets of that corporation, excluding, liabilities of all sorts. Were the rule otherwise, this peculiar condition might exist: A corporation might accumulate a surplus of $100,000, which it could either use in its business or distribute in dividends to its stockholders. If it used this sum in its business, its franchise tax would then be based upon the amount of its outstanding capital stock, plus $100,000. But if it distributed this same $100,000 as dividends to its stockholders and immediately borrowed it back from them and employed it in its business, the franchise tax, upon relator's theory, would be based upon the outstanding capital stock alone. In other words, the amount of the franchise tax would depend on the method of book-keeping employed. A statute is not to be so construed as to produce an absurdity.

Other considerations tend strongly to support the conclusions we have announced. It may not be amiss to discuss some of them. It will be presumed, in the absence of a declaration to the contrary, that the General Assembly did not mean to depart from the fixed public policy of the State with reference to the levying of taxes. It hence becomes pertinent to inquire what that policy is, as tending to shed some light upon the meaning of this act. Turning to our Constitution as the highest evidence of the policy of the State, we find two pertinent provisions, to-wit:

**Taxation Policy.**

"Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws." [Sec. 3, Article X, Constitution of Missouri.]

"All property subject to taxation shall be taxed in proportion to its value." [Sec. 4, Article X, Constitution of Missouri.]

The Constitution thus declares that taxes shall be uniform and in proportion to the value of the property taxed. (Note that it is the value of the property, not the value of the owner's interest therein, that is to be taxed.) These provisions are intended to secure uniformity and equality in taxation, so far as possible, and they apply to all taxpayers both natural and corporate, and to franchise as well as to property taxes.

Relator contends that its indebtedness should be deducted from its surplus assets, for assessment purposes. But is any natural person allowed to deduct his indebtedness from his assets, before giving his property in for assessment for taxation? Not at all. It is well known that this has never been the policy of this State. Now a franchise may be granted to natural persons as well as to corporations, and may be taxed when owned by the one as well as when owned by the other. Why should the Legislature be supposed to have intended to depart from the constitutional rule of equality and uniformity merely because this a franchise tax? It cannot be presumed that the law intends, in matters of taxation, to extend to corporations a favor which it denies to natural persons.

"There is a seeming injustice in taxing corporations which are largely indebted, and whose earnings are insufficient to pay the accruing interest, as is alleged to be the fact in the present case, to the full extent of the value of all their property and privileges, without regard to their indebtedness, yet it has never been the policy of the Legislature to make any discrimination in

favor of individuals on this account, and corporations can not claim an exemption from taxation when, under like circumstances, an individual would not also be exempt to the same extent." [Porter v. Rockford Railroad Co., 76 Ill. 561, l. c. 588.]

Further, by way of illustration of the idea of uniformity and equality of taxation, even as between corporations, suppose that each of two corporations has $200,000 invested, and each has $100,000 of outstanding capital stock, and $100,000 in surplus assets, but one owes $100,000 for borrowed money, while the other owes nothing. Construing this statute as respondent has construed it, each would pay the same amount of taxes. If relator's contention is correct, the first, after deducting its indebtedness, would be taxed upon a basis of $100,000, while the second, having no indebtedness, would be taxed upon a basis of $200,000. Would that be uniformity and equality in taxation, either as to the value of the property *owned,* in the case of a property tax, or as to the measure of the *use* of the franchise, in the case of a franchise tax? Obviously not. Yet if relator's contention should be upheld, that is precisely what would happen in the case supposed. Such a construction would render the statute unconstitutional. "Unequal taxes may not be imposed upon property of the same kind, in the same condition, and used for the same purposes." [Guthrie on Fourteenth Amendment, cited with approval in Russell v. Croy, 164 Mo. 69, l. c. 110.] It might well be argued that such a discrimination would be in violation of the Fourteenth Amendment to the Constitution of the United States, guaranteeing the equal protection of the laws. Now it is horn-book law that a statute must not be so construed as to make it unconstitutional when it is susceptible of a construction which will harmonize it with the Constitution.

Moreover, as we have said, we see no reason why the provisions of Section 4 of Article X of our Constitution, providing that all property *"shall be taxed in proportion to its value,"* should not apply as well to

franchises as to any other species of property. It certainly is not beyond the power of the Legisla-

**Extent of Use.** ture to take the extent of the use of a franchise as a basis for the computation of the franchise tax. That, we think, is the standard adopted by the Legislature in this instance. Generally speaking, a franchise which is not used is non-productive. Its value depends, usually at least, upon the extent to which it is used. If, therefore, each of two corporations uses in its business the same amount of outstanding capital stock, and the same amount of other assets, each is using its franchise to the same extent, and it is, therefore, reasonable to assume that these franchises are of equal value. Each should therefore pay an equal amount of taxes. The fact that one corporation may have borrowed fifty per cent of its total capital, diminishes the actual value of its outstanding capital stock to that extent, but does not in the least diminish the extent to which it is using its franchise. On the contrary, the borrowing corporation, by the act of borrowing, is making a greater use of its franchise than is the non-borrowing corporation. It is upon the *franchise,* we reiterate, that the statute here in question levies a tax. The extent of the *use* of the franchise is the basis for the computation of the tax.

Furthermore, it is frequently the case that a corporation's total gross assets do not equal the par value of its outstanding capital stock. In such a case, its outstanding capital stock is actually below par. It may also be indebted to such an extent that after paying its debts, the outstanding capital stock would not be worth more than fifty cents on the dollar. Having no surplus, it would have nothing from which it could deduct its indebtness, even if such deduction were allowed. Yet by the express language of this act, such a corporation would be assessed upon "the par value of its outstanding capital stock." Why should it be supposed that the General Assembly meant, as relator contends it did mean, that a corporation whose outstanding capital

stock is worth *less than par should not be allowed to deduct its liabilities,* while one whose outstanding capital stock is worth *more than par should be allowed that privilege?* Such a distinction would be unreasonable, discriminatory and in defiance of the uniformity and equality clauses of our Constitution. Yet this conclusion is the inevitable result of relator's argument.

"It is not denied that the State may classify property for taxation . . . But we do mean to say the classification must rest on some reason other than mere ownership and that different pieces of property of the same kind, held and used for the same or similar purposes, within the same jurisdiction, cannot lawfully be so classified as that one is subject to the tax and the other exempt, merely because one belongs to a . . . large concern and the other to a small one." [Russell v. Croy, 164 Mo. 69, l. c. 107.]

Under a constitutional provision substantially similar to ours, a Nebraska statute allowing a deduction of indebtedness in assessing a franchise was held void. "This provision of the Constitution does not allow the indebtedness of individuals or corporations to be deducted from the true value of property or franchises in determining the value of such property and franchises for taxation, and if the 'manner' of assessment prescribed by the Legislature, when strictly pursued, would result in so doing, and would not result in levying a tax 'by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises,' it violates the constitution, and is so far invalid." [State v. Karr, 64 Neb. 514, l. c. 521.]

That the Franchise Tax Act may cause hardships may be conceded. What taxing act ever failed to cause hardships? But the wisdom or unwisdom of particular acts of legislation is for the decision of the General Assembly. So, also, is the correction of legislative mistakes, if any. So long as it keeps within its constitutional bounds, the Legislature is supreme. The constitutionality of this act is not questioned in this pro-

ceeding. Clearly, in this case the General Assembly meant by surplus, the excess of assets employed in the business over the par value of outstanding capital stock, without regard to liabilities.

It is in harmony with the principles which we have discussed that respondent has levied upon relator the tax which is here called in question. We think respondent correctly construed the law, and that the writ of *certiorari* heretofore issued by us should be quashed. It is so ordered.

All concur except *Woodson* and *Goode, JJ.,* who dissent; *Goode, J.,* in separate opinion. *Graves, J.,* concurs in separate opinion. Motion for rehearing overruled in *Per Curiam* opinion.

GRAVES, J. (concurring).—I. I concur with our learned brother in the disposition that he makes of the term "surplus" as used in the Act of 1917, Law 1917, p. 237. I agree with him that the purpose of the law was merely to fix a basis for a franchise tax, and that the word "surplus" as therein used means the property used in the business, in excess of the capital stock, without consideration of debts or liabilities. But I have had trouble with Section 10 of the act, in determining whether or not the corporation here involved had to report such "surplus," and thereby subject it to the franchise tax. This is the reason for this separate concurrence, and an analysis of the Act itself, which follows. In this analysis, we shall confine ourselves to those portions of the Act which relates solely to a Missouri corporation, which employes all its capital stock, and other property in this State, for such is the *status* of the complaining corporation here.

Section 10.

II. The Act of 1917, supra, is composed of 14 sections, including the section which repeals previous conflicting laws. Now taking a Missouri corporation which employs all that it has (capital stock and other property) in this State, let us get the applicatory law. With the exception of the sense in which he term "surplus"

is used in the act, and the further exception of the conglomerated phrases of Section 10 of the act, the law is reasonably clear. It covers several classes of corporations and refers to fixed fees as to some and franchise taxes as to others.

Section 1 of the act refers to six classes of corporation: (1) Missouri corporations, which employ all their stock and other property in Missouri; (2) Missouri corporations which employ only a part of their stock, and other property in Missouri; (3) foreign corporations; (4) corporations not organized for profit; (5) express companies, and (6) a class of insurance companies. As to class one, supra, this section reads: "Every corporation organized under the laws of this State shall, in addition to all other fees and taxes now required or paid, pay an annual franchise tax to the State of Missouri equal to three-fortieths of one per cent of the par value of its outstanding stock and surplus."

The 4th, 5th and 6th classes, supra, are exempted in the proviso of the section, for reasons which are clear. Section 2 then thus provides:

"Every corporation liable to the tax prescribed in the foregoing section shall make a report in writing to the Missouri Tax Commission, if it is in existence, and if not, then to the State Board of Equalization, annually on or before the first day of February, in such form as said Commission or said Board of Equalization may prescribe. Such report shall be signed and sworn to before an officer duly authorized to administer oaths by the president, vice-president, secretary, treasurer or general manager of the corporation and shall contain the following:

"1. Name of corporation.

"2. The location of its principal business office.

"3. The names of its president, vice-president, secretray, treasurer, and members of the board of directors, with the residence and postoffice address of each.

"4. The amount of authorized capital stock.

"5.  The amount of capital stock subscribed.

"6.  The amount of capital stock issued and outstanding.

"7.  The amount of capital stock paid up.

"8.  The par value of the stock.

"9.  The clear market value of the stock.

"10.  The amount of surplus and undivided profits.

"11.  The nature and kind of business in which the corporation is engaged and the location of its place or places of business.

"12.  The clear market value of its property and assets without this State.

"13.  The clear market value of its property and assets without this State.

"14.  The clear market value of its total capital stock, surplus, property and assets.

"15.  The change or changes, if any, in the above particulars made since the last annual report."

Paragraphs 12, 13 and 14 clearly provide for a corporation of the class here involved to report the very property found in the report of this corporation, and from which the Tax Commission has found and fixed the tax complained of in this action.

Section 3 of the act covers the duties of the Tax Commission, and serves no special purpose in this outline. Sections 4 and 5 deal with corporations (domestic and foreign) which do business in this State, but which have no capital stock. The latter provides the form of report for the same. Section 6 provides for certain fees to be collected annually from the corporations covered by Sections 4 and 5, and also for certain annual fixed fees for certain other corporations therein mentioned. Neither of these sections (4, 5 and 6) has any application to the complaining corporation here, but we give this outline for the purpose of trying to get a meaning out of Section 10 of the act.

Section 7 makes the franchise taxes and penalties a lien upon the property, and serves no real purpose for this discussion. Section 8 provides for a suit to

collect the taxes, and Section 9 provides for a forfeiture of charter and license rights for failure to report under the act. The only other material section is Section 10, which reads:

"All insurance companies, building and loan associations, and other corporations, the fees of which are fixed at lump sums by this act, and all corporations which employ all their property and all their outstanding capital stock in this State shall all report and pay the fees on all its outstanding capital stock, whether employed in this State or not, shall not be required to set out in the report required by this act the value of its property within this State or without the State."

If there ever was a conglomerated mass in a section of a statute, it is to be found is this Section 10. If you strike out from this section the clause, "and all corporations which employ all their property and all their outstanding capital stock in this State shall all report and pay the fees on all its outstanding capital stock, whether employed in this State or not," then the remainder would harmonize with all that has gone before in the previous sections. This because the previous sections have dealt with both franchise taxes, and fixed annual fees. With this clause cut out, the section would refer to and thoroughly fit in Section 6, supra, which is the fixed fee section, and not the general franchise tax sections. With the foregoing clause in Section 10, there is apparently a conflict between Section 10 and Sections 1 and 2, supra. This, upon the theory that you can make 'any sense out of the clause at all. This clause in the first part thereof refers solely to corporations which employ all stock and property in this State. Yet it is followed up by the incomprehensible phrase "shall all report and pay the fees on all its outstanding capital stock, *whether employed in this State or not.*" Just how a corporation of the class just named in the first clause (a corporation using all its stock and property in this State) could have some of its capital stock in use in some other state is not made plain. But be this

as it may, there is one thing which is plain. This clause only refers to "fees on all its outstanding capital stock" and there is no provision for fees upon stock (for corporations of the class here involved) in the whole act preceding Section 10. There is a specific provision for a franchise tax, but a franchise tax is not a fee. This, because Section 6, supra, provides for fixed annual fees, thus distinguishing between franchise taxes and fixed fees. The clause is therefore meaningless in this act, and it should be so declared. I therefore concur in the opinion of our learned brother.

GOODE, J., (dissenting).—After a more thorough study of the Franchise Tax Act, in considering the motion for a rehearing, I have concluded the word "surplus" is used in it, not to denote the entire assets of a corporation in excess of its capital stock, but to denote the excess of assets over liabilities. The act is ambiguous, conflicting and difficult to interpret.

Two possible meanings of Section 10 have been propounded in the briefs: One is that as many corporations own property in this State which is not used in the business of the corporate owners, the words "whether employed in this State or not" (which appear Section 10. to contradict the prior words, "which employ all their property . . . in this State"), are intended to require such unused property to be taken into account in ascertaining the amount of the surplus assets of such corporations. The other interpretation offered to reconcile the contradictory phrases of the section, is that it was copied from a section in a similar act of Arkansas, but by oversight some words of the Arkansas statute were omitted and thereby confusion was caused in the language of the section in the Missouri Statute. [Kirby & Castle's Ark. Digest 1918, sec. 8480.] The argument is that the words "and any corporation which" should be inserted in Section 10, so it would read as follows:

"All insurance companies, building and loan associations, and other corporations, the fees of which are

fixed at lump sums by this act, and all corporations which employ all their property and all their outstanding capital stock in this State (and any corporation which) shall report and pay the fees on all its outstanding capital stock, whether employed in this State or not, shall not be required to set out in the report required by this act, the value of its property within this State or without the State.''

Neither of those ingenious suggestions can be adopted as the sense of Section 10. without adding to the language of it, or giving a meaning to the language that it does not easily bear. The first one would require the words ''capital stock'' to be interpreted as meaning ''property'' or ''assets''—the total property or assets of a corporation. The second would require words to be interpolated in the section at a place where it is by no means obvious they, or their equivalent, were intended to be inserted, and were omitted by mistake.

The section appears to relieve from the duty to report the value of property, within or without this State, not only insurance companies, building and loan associations and other corporations taxed in a lump sum, but also ''all corporations which employ all their property and all their outstanding capital stock in this State.'' And if such corporations, which comprise most of those subject to the franchise tax, are not required to report the value of their assets, the logical and natural conclusion is that the Legislature did not intend that their franchise tax should be measured by their assets.

Paragraph 12 of Section 2, requires every corporation liable to the tax prescribed in Section 1, to report the clear market value of its property and assets in this State, and Paragraph 13 of Section 2 **Other Paragraphs.** requires it to report ''the clear market value of its property and assets without this State.'' I perceive no way to reconcile those two paragraphs of Section 2 with Section 10, except by the construction that Section 10 so far limits said Paragraphs 12 and 13 as to exact a report of total assets only from corpo-

rations which employ part of their assets or capital stock outside of this State; a construction hardly permissible, because it would reduce so largely the number of companies required to report their assets as to render it improbable the Legislature intended such a consequence.

Be that matter as it may, a strong reason is found for concluding "surplus" does not mean total assets, in the circumstance that Paragraph 14 of Section 2 distinguishes "surplus" from "property and assets," for it requires a corporation to report the "clear market value of its total capital stock, surplus, property and assets." Besides, in Paragraph 10 of Section 2, the word "surplus" is used along with the words "undivided profits," in requiring a report of "the amount of surplus and undivided profits."

The first of those paragraphs shows, in my opinion, that the word "surplus" was not used in the sense of total property and assets; for if it was the Legislature indulged in a useless repetition.

The tenth paragraph of Section 2, in speaking of "surplus and undivided profits," indicates that those terms were employed to mean what they do in commercial circles; namely, the amount of assets over liabilities, whether the excess of assets is carried by the company under the name of "surplus" or of "undivided profits."

The decisions to which we have been cited relate mainly to the meaning of "surplus" in bankers' parlance, but in so far as they bear upon the present case they tend to support the view that the word was used in the Franchise Tax Act to denote the excess of the assets of a corporation over its liabilities, except its liability to shareholders on the shares of stock held by them . [Bank v. Moon, L. R. A. 1918 C. 986; Leather Mfrs. Nat. Bank v. Treat, 116 Fed, 774, 128 Fed. 262; Anderson v. Loan & Trust Co., 241 Fed. 322.]

Much is said about the bad effect that will come from one or the other construction of this act; some-

times a proper matter for consideration in
**Hardships.** construing statutes. But in the present case,
undesirable results have been reasoned out in
the briefs of the parties as likely to follow either con-
struction, and it has seemed best to determine the mean-
ing of the act solely from its terms. The majority opin-
ion is not without support in some of the provisions of
the law; but for the reasons stated, I think the intention
of the Legislature was not to give to the word "surplus"
the meaning given to it in that opinion, from which I
respectfully dissent.

## ON MOTION FOR REHEARING.

PER CURIAM:—A franchise tax is not one levied
upon property, but one placed on the right to do
business. It may be graduated according to the extent
of the business done. The act before us con-
**Franchise** templates a tax upon the right to do business
**Tax.** in accordance with the property actually used
in the business.

Franchise taxes, to be fair, should be measured by
the volume of business. The volume can best be measur-
ed by the property used in the business. To illustrate,
one corporation has $1000 of its own, and starts a
business with it as its capital stock. It keeps within
its capital stock. The volume of its business necessity
is small. On the other hand another corporation has
$1000 of its own (in capital stock) and borrows $49,000,
and with the $50,000 starts the same kind of business.
It should do many times the business of the other
and its tax upon the right to do business should be
proportionately greater.

With this idea of a franchise tax, it is hardly
fair to the Legislature to say that in the use of the
word "surplus" it means the mere excess of assets
over liabilities. To give it such a construction would
not proportion the tax to the business done, as illustrated
above by the two supposed corporations. With the

State ex rel. v. State Tax Commission.

two supposed corporations, giving the term "surplus" the construction for which counsel contend, we would have both paying the same tax, and yet one doing a business many times larger than the other, because of the money actually used in the business. It would get the profits of an increased business, whilst paying only a nominal franchise tax for the right to do that business. So that, notwithstanding the great list of briefs filed by friends of the court upon the motion for rehearing, we are of the opinion that we properly construed the term "surplus" in the franchise tax measure.

II. We have also read with pleasure the briefs discussing the construction of Section 10 of the act given by the separate concurring opinion. It may be that the writer of the Missouri act (generally known not to have been the Legislature, or any member thereof) had in mind to borrow from the Arkansas law, but if he failed to borrow the law, we are left to give the best construction we can of what has been presented to the court for construction. We are fully satisfied with the construction that we there placed upon this Section 10 of the law before us.

The *status* of bank deposits is not discussed in the opinions heretofore written, and should not be discussed now. Whether they constitute the working assets of a bank or trust company should be left to a case where such is a live issue. We have troubles enough with the questions in the particular cases, without extending the inquiry to outside problems. The motion for rehearing should be overruled. It is so ordered. All concur except *Woodson, J.,* absent, and *Goode, J.,* who dissents in opinion filed.