AMERICAN LIFE & ACCIDENT INSUR-
ANCE COMPANY, a corpo-
ration, Appellant,

v.

Howard L. LOVE, J. Ralph Hutchison and
Hunter Phillips as Members of the State
Tax Commission of the State of Missouri;
Thomas A. David as Director of Revenue
of the State of Missouri; and M. E. Mor-
ris as Treasurer of the State of Missouri,
Respondents.

No. 52819.

Supreme Court of Missouri,
Division No. 2.

July 8, 1968.

Motion for Rehearing or for Transfer to
Court En Banc Denied Sept. 8, 1968.

John A. Morrison, Robert M. Kroenert,
Morrison, Hecker, Cozad, Morrison & Cur-
tis, Kansas City, for appellant.

**178**

Norman H. Anderson, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondents.

FINCH, Presiding Judge.

This is an appeal by American Life & Accident Insurance Company (American), plaintiff herein, from the judgment entered in this action wherein it challenged the method employed by the State Tax Commission of Missouri (Commission) to compute plaintiff's corporation franchise tax for the years 1960–1965. We have jurisdiction, regardless of the amount involved, because construction of the revenue laws of the State of Missouri is involved. Art. V, § 3, Constitution of Missouri, 1945, V.A.M.S. The case comes to the writer on reassignment.

American is an insurance company incorporated July 2, 1925, under the stipulated premium plan, §§ 377.200–377.460 (all references are to RSMo 1959, V.A.M.S.). From the outset, it has written only one type of policy, an investment type policy authorized by § 377.270. That section requires that policy reserves taken out of premiums paid be established for the benefit of policyholders for the purposes expressed in the statute. These funds must be invested in certain types of securities and then deposited with the Superintendent of Insurance in a joint safety deposit box. Interest on these reserves to the extent of three per cent is deposited as additional reserve for the benefit of policyholders. Earnings in excess of three per cent go to the company and become a part of its regular assets.

Up until 1955 the company reported and paid franchise tax on its capital plus its surplus which was determined after deduction of policy reserves and other liabilities. During that period, the provisions of the franchise tax statutes were essentially the same as those in existence at the time this dispute arose.

In 1956 the Commission, based on an opinion of the Attorney General, changed the method of computing American's franchise tax and began to determine the tax on the basis of total assets, without any deduction for reserves or other liabilities. That opinion of the Attorney General was based on a decision of this court in 1920 in the case of State ex rel. Marquette Hotel Investment Co. v. State Tax Commission, 282 Mo. 213, 221 S.W. 721. This change was disputed by American and subsequently it filed this suit for declaratory judgment and injunction. The tax asserted by the Commission for the years in question is $6,947.73. American paid $758.97, the amount which it contends was the amount properly due, leaving the amount in dispute $6,188.76. The amount in dispute was deposited by American with the circuit clerk.

The franchise tax in question is imposed by § 147.010, which, insofar as here pertinent, provides as follows: " * * * every corporation of this state organized under or subject to chapter 351, RSMo 1949 or under any other laws of this state shall, in addition to all other fees and taxes now required or paid, pay an annual franchise tax to the state of Missouri equal to one-twentieth of one per cent of the par value of its outstanding shares and surplus, * * *."

The disagreement herein, in the final analysis, involves the meaning of the word "surplus" as used in § 147.010, and whether various liability items on American's balance sheet are to be deducted in determining surplus for the purpose of computing the company's franchise tax liability.

The eleven items which American contends should have been deducted in order to arrive at its surplus are described briefly as follows:

1. "Aggregate Reserve for Life Policies." These are the legal reserves required by § 377.270 on the investment type of policy which American issues. The funds are invested in securities approved by the Insurance Department and are then deposited in a joint safety de-

posit box with the Superintendent of Insurance. These securities may be withdrawn therefrom only with the permission of the Insurance Department, and when withdrawn must be replaced with similar securities. These reserves guarantee payment of death benefits and and the policyholders have rights to withdraw these reserves as specified in the policies of insurance. A policyholder cannot be deprived of these reserves.

2. "Aggregate Reserve for Accident and Health Policies." This reserve consists of amounts set up by the company for claims already made, pending settlement thereof.

3. "Policy and Contract Claims—Life, Accident and Health." This amount is set up by the company, based on its experience at the end of each year, and serves as a reserve for claims on file and unreported claims.

4. "Policyholders' Dividend Accumulations and Coupons." These are dividends left on deposit with and drawing interest from the company.

5. "Policyholders' Dividend Payable and Coupons." This fund represents dividends due and payable but left on deposit with American.

6. "Premiums and Annuity Considerations Received in Advance." These are unearned premiums which are reportable as a liability until earned.

7. "Matured Endowments and Annuities Left on Deposit." These have been left with the company but are payable to policyholders on demand.

8. "General Expenses Due or Accrued." These are outstanding bills payable.

9. "Taxes, Licenses and Fees Due or Accrued." These also are outstanding obligations which the company must pay.

10. "Agent's Bond Deposit." The company requires agents to deposit these cash bonds in lieu of surety bonds and interest is paid thereon. This deposit, plus interest, is payable to the agent when he leaves the company.

11. "Mandatory Securities Valuation Reserve." This account, in the form of securities held by the company, is required by the Insurance Department as a means for compensating for fluctuations in the value of the company's securities.

The trial court held that none of the above items should be deducted in determining, pursuant to § 147.010, the capital and surplus upon which the franchise tax was to be computed. It held that the assessment as ordered by the Commission for the years in question was correct and that the clerk should pay over the sums in dispute which had been deposited by plaintiff with the clerk of the court.

The Commission, to support the action of the trial court, relies primarily on this court's opinion in State ex rel. Marquette Hotel Investment Co. v. State Tax Commission, supra. In that case the hotel company had total assets of $708,770.90. Its liabilities amounted to $700,000, consisting of capital stock of $350,000 and indebtedness for borrowed money of $350,000. The hotel company contended that its franchise tax should be computed on the basis of $358,770.90, which consisted of its capital stock of $350,000 plus a surplus of $8,770.90, arrived at by taking the excess of assets over capital stock and other liabilities. The Tax Commission contended that the franchise tax statute, which was practically the same then as now, in referring to capital and surplus, meant total assets of the company used in the operation of its business (not reduced by liabilities), and that the tax should be computed on the basis of $708,770.90. In so ruling, the majority opinion held (221 S.W. l. c. 722) that the tax should be based, "First, upon the amount of its outstanding capital stock, regardless of the value of its assets, whether more or less than the amount of the outstanding capital stock; and, second, upon any surplus property employed in its

business in this state." This, the court stated, included the borrowed money in question because it constituted working assets of the company and could be used by it to acquire other assets for use in its business, resulting in benefit to the company. The court concluded that the legislature intended that such assets be treated as surplus for the purpose of determining the corporation franchise tax. The fact that the money had been borrowed and that the company was indebted therefor was immaterial for franchise tax purposes.

■ This interpretation of the word "surplus" in the Marquette Hotel case differs from the meaning usually ascribed to that term. The majority opinion so recognized. Ordinarily, "surplus" means the residue of assets after liabilities, including capital, have been deducted. However, in Marquette Hotel, this court held that the language of the statute as a whole indicated an intention to compute the tax on the basis of the extent of use of the franchise instead of on capital plus surplus in the more frequently accepted sense. Consequently, a deduction for the borrowed money was not permitted in that case.

The doctrine of Marquette Hotel was followed in Household Finance Corporation v. Robertson, Mo., 364 S.W.2d 595 [4]. We do not understand plaintiff's brief to attack that doctrine or to ask us to review and overrule Marquette Hotel. Rather, we are asked to rule that as to the various items here in controversy Marquette Hotel simply is not applicable. Hence, there is no reason for us to discuss and we do not consider the soundness of the definition of "surplus" as promulgated in the Marquette Hotel case.

American first asserts that Item 1, consisting of the reserves required by § 377.-270 and deposited with the Superintendent of Insurance, belong to and are held for the benefit of policyholders and cannot be considered surplus of the company for the purpose of determination of its franchise tax liability. These reserves are not employed by the company in the same sense that the borrowed money in the Marquette case was used. There, the hotel company could utilize the money as it saw fit. It could expend that money to buy whatever it desired. The borrowed money or the things for which it was expended belonged to the company and it simply had a liability for money borrowed. The same cannot be said with respect to these reserves which the statute requires plaintiff to deposit with the Superintendent of Insurance for the benefit of policyholders. It may not use the securities in its business. It cannot cash them and use the proceeds as it desires. It may not borrow money thereon. These reserves are not working assets of the company. They are held in trust for and belong to the policyholders. We find nothing in the language of the franchise tax statute or in the Marquette Hotel opinion which would indicate that such insurance reserves are intended to be included in the language "par value of its outstanding shares and surplus" contained in the franchise tax law.

■ Taxing statutes are to be construed strictly in favor of the taxpayer and against the taxing authority. Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W.2d 343; Osterloh's Estate v. Carpenter, Mo., 337 S.W.2d 942; United Air Lines, Inc. v. State Tax Commission, Mo., 377 S.W.2d 444. Such construction would exclude insurance reserves of the nature included in Item 1 in the computation of the franchise tax of plaintiff. We hold that the trial court erred in holding that reserves described as Item 1 were to be included in computing the plaintiff's franchise tax liability.

The Commission asserts that deduction of these life insurance reserves in computation of franchise tax liability would violate constitutional rules of taxation in that taxes would not be uniform, as required by Art. X, § 3, Constitution of Missouri, 1945. We do not agree. Art. X, § 4(a), Constitution of Missouri, 1945, provides as follows: "All taxable property

shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property. The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned. Nothing in this section shall prevent the taxing of franchises, privileges or incomes, or the levying of excise or motor vehicle license taxes, or any other taxes of the same or different types." In the case of General American Life Ins. Co. v. Bates, 363 Mo. 143, 249 S.W.2d 458, this court recognized the difference between constitutional requirements as to property taxes and those relating to excise taxes. The court said 1. c. 462: " * * * Excises include ' " * * * every form of taxation which is not a burden laid directly upon persons or property; in other words, excises include every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation." ' * * * Excises are not subject to all the constitutional inhibitions applicable to taxes on property. They are valid as revenue measures if they operate alike upon all within the same class of subjects. * * * "

Our conclusion that insurance reserves deposited with the Superintendent of Insurance pursuant to § 377.270 are not to be included in the computation of franchise tax liability of insurance companies is in accord with the principle announced in the General American case and with the provisions of Art. X, § 4(a). It does not violate the provisions of Art. X, § 3, of the Missouri Constitution.

■ We have concluded that Items 2 through 11 fall within the doctrine announced in Marquette Hotel and Household Finance and are not to be deducted in the computation of plaintiff's franchise tax liability. Essentially, these items represent debts payable of plaintiff company. Its balance sheet discloses these liabilities, but the funds to pay the same are retained by the company and not deposited with the Insurance Department as in the case of reserves described as Item 1. It is true, as plaintiff states, that some of them are payable on demand, but that is true of many liabilities which would fall within the doctrine of the Marquette Hotel case. Certain of Items 2 through 11 are described as insurance reserves, but they are not the same as the statutory reserves described in Item 1. Rather, these are contingency reserves set up to meet claims pending determination of the amount of liability thereon, and in some instances represent unreported claims. They are based on experience of the company. It is true, as plaintiff points out, that these are items which are deducted in determining the surplus of an insurance company according to generally accepted principles of insurance and accounting. However, a similar argument can be made as to the liability of the hotel company in Marquette. Such liabilities normally are deducted in determining the surplus of such a company, but this court held that for franchise tax purposes such items were not deductible. We find no basis for distinguishing these items from the doctrine of the Marquette Hotel case. As we have stated previously, plaintiff seeks to distinguish these items and does not attack the fundamental doctrine of Marquette Hotel. We find no valid basis for distinguishing and consequently we rule that these items are not to be deducted in determining plaintiff's franchise tax liability.

■ Plaintiff asserts as a further reason for excluding these items the fact that for more than thirty years there was such a construction of § 147.010 (and its predecessor sections) by the officials charged with the enforcement thereof. During that period, liabilities were deducted in determining the franchise tax liability of life insurance companies. Plaintiff says that such practice and legislative acquiescence

therein should be given great consideration, and that based thereon plaintiff is entitled to deduction of all of the items in question. The cases cited by plaintiff indicate that such conduct on the part of the State is entitled to weight and consideration but is not conclusive. We have given consideration to that history but have concluded that it should not be held to be determinative on this issue. We rule that, pursuant to Marquette Hotel and Household Finance, Items 2 through 11 should not be deducted in determining plaintiff's franchise tax liability.

Accordingly, this case is reversed and remanded with directions to the trial court to enter a decree in accordance with the views expressed in this opinion.

MOSS, Special Judge, EAGER and DONNELLY, JJ., concur.