## THE STATE, Appellant, v. FREEHOLD INVESTMENT COMPANY.

### In Banc, July 31, 1924.

1. **CORPORATION FRANCHISE TAX: In Proportion to Value: Due Process of Law.** A franchise tax is not a property tax, and hence the Act of 1917, requiring a corporation organized for profit to pay an annual franchise tax equal to three-fortieths of one per cent of the par value of its outstanding capital and surplus employed in this State, does not violate that clause of the Missouri Constitution declaring that "all property subject to taxation shall be taxed in proportion to its value." Nor does it violate the due-process-of-law clause of the Missouri Constitution or of the Fourteenth Amendment.

State v. Freehold Investment Co.

2. ———: **Uniformity: Equal Protection.** The Corporation Franchise Tax Act of 1917 does not violate Section 3 of Article 10 of the Missouri Constitution, which declares that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and for the same reason it does not violate the equal-protection-of-the-laws clause of the Fourteenth Amendment.

3. ———: ———: **Discrimination: In Favor of Foreign Corporation Having No Capital Stock.** A corporation organized for profit under the laws of another state and having no capital stock cannot come into this State and do business here and satisfy the Corporation Franchise Tax Act of 1917 by paying a flat fee of twenty-five dollars. A corporation having shares of common stock of no stated par value cannot under the statutes be organized in this State, but such a corporation if organized under the laws of another state is not prohibited by our laws from coming into this State and doing business here, and if it comes into this State it must pay the same amount of franchise tax that a domestic corporation engaged in a like business and employing the same amount of money and assets in this State is by said act required to pay, and hence there is no discrimination in favor of such foreign corporation, and no violation of the constitutional rule of uniformity.

4. ———: ———: ———: ———: **Includes Corporations Organized for Profit: Exceptions.** The Corporation Franchise Tax Act of 1917 applies alike to all corporations organized for profit, except express and insurance companies. Except express companies and insurance companies, all corporations organized for profit, wherever organized, must pay an annual franchise tax equal to three-fortieths of one per cent of their capital and surplus employed in this State. Mutual insurance companies, and corporations strictly organized for religious, educational or charitable purposes and having no capital stock, are not organized for profit, and, with the exception that they must pay an annual flat fee of twenty-five dollars, are not chargeable with the franchise tax. Foreign insurance companies having a capital stock, which pay an annual tax on their premium receipts in this State, must pay only a flat incorporation franchise tax of from fifty to one hundred dollars, dependent on the amount of such stock; but there is a sound basis for classifying them, and express companies which pay an annual tax on their gross receipts in this State, as corporations not organized for profit, and for taxing them differently from ordinary corporations organized for profit. Building and loan associations must pay a flat franchise tax of twenty-five dollars, and are not chargeable with further franchise taxes, but they are of a character entirely different from ordinary corporations organized for profit.

State v. Freehold Investment Co.

The act makes no other discrimination among corporations organized for profit and doing business in this State, but whether they be domestic or foreign, whether the par value of their stock be stated or not stated in their articles of association, all are required to pay an annual franchise tax of three-fortieths of one per cent of their capital and surplus employed in this State, and permits no one of them to escape the payment of that prescribed tax by paying a flat fee of twenty-five dollars. The act, therefore, complies with the rule of uniformity of taxation prescribed by the Missouri Constitution, and denies to no one the equal protection of the laws guaranteed by the Fourteenth Amendment.

5. ———: Apportionment to Corporations Having No Stated Capital Stock: Workable Plan. The words of Section 1 of the Corporation Franchise Act of 1917, to-wit, "for the purpose of this act such corporation shall be deemed to have employed in this State that proportion of its entire (outstanding) capital stock and surplus that its property and assets in this State bear to all its property and assets wherever located," afford a workable basis for ascertaining what is three-fortieths of one per cent of the capital and surplus employed in this State by a corporation having no capital stock, or whose articles do not state the par value of its stock. There are no such corporations organized for profit in this State, nor do the statutes provide for their incorporation, and the act was apparently drawn upon the theory that all business corporations, domestic and foreign, would be stock companies having shares of stated par value; but foreign corporations having no stated capital stock can be licensed and authorized to do business in this State, and the franchise tax is not levied upon the capital stock and surplus, but is merely measured thereby, and is imposed upon the privilege of doing business in this State, and upon the company's capital and surplus employed in this State as compared to all its assets.

6. ———: ———: ———: Report and Information. A corporation, having no capital stock but organized for profit and doing business in this State, must make an annual report and give the information called for by the Corporation Franchise Tax Act of 1917, and is subject to the power of the State Tax Commission to make an independent examination, and those things having been done a franchise tax equal to three-fortieths of one per cent of its capital stock and surplus employed in business in this State may be ascertained and assessed without difficulty.

Headnotes 1, 2, 4, 5 and 6: Taxation: 1, 37 Cyc. 761, 817, 1026; 2, 37 Cyc. 1026; 4 and 5, 37 Cyc. 742, 813, 1045; 6, 37 Cyc. 1020, 1077. Headnote 3: Corporations, 14 C. J. par. 519 (1926 Anno); Taxation, 37 Cyc. 748.

Appeal from Greene Circuit Court.—*Hon. Orin Patterson,* Judge.

REVERSED AND REMANDED (*with directions*).

*Jesse W. Barrett,* Attorney-General, and *Harry C. Willson,* Special Assistant Attorney-General, for appellant.

(1)   The uniformity section of Article X of the Constitution of Missouri is not violated by the terms of the Corporation Franchise Tax Law.   The requirement of uniformity in taxation does not preclude the division into classes, and taxes, while bearing equally on different members of each class, may bear unequally on the classes. Massachusetts Bonding & Ins. Co. v. Chorn, 274 Mo. 15; State ex rel. v. Henderson, 160 Mo. 190; Northwestern Masonic Assn. v. Waddill, 138 Mo. 628; St. Louis v. Bowler, 94 Mo. 630; Blackrock Copper Min. & Mill. Co. v. Secy. of State, 34 Utah, 369, 381.   The Legislature has made a reasonable classification based on the distinction between corporations with capital stock and corporations without capital stock.   Note to Bacon v. State Tax Commissioners (126 Mich. 22) in 60 L. R. A. 321, 345, IX, b. 1; Hessler v. Thomas Colliery Co., 24 A. L. R. 1215.   (2) The tax involved here is an excise or privilege tax.   It is not a property tax and is not within the provision of Section 4 of Article X, Constitution of Missouri.   Laws 1917, pp. 237-242; Mo. Constitution, Art. 10, secs. 3 and 4; State v. Stonewall Insurance Co., 89 Ala. 338; State v. Railroad, 45 Md. 361; Phoenix Carpet Co. v. State, 118 Ala. 143; People v. Home Ins. Co., 92 N. Y. 328; State ex rel. v. Schram, 271 Mo. 223; People ex rel. v. Knight, 174 N. Y. 475; State ex rel. Marquette Hotel Invest. Co. v. State Tax Commission, 282 Mo. 213; St. Louis-San Francisco Railroad Co. v. Middlekamp, 256 U. S. 224; St. Louis Southwestern Railroad Co. v. Arkansas, 235 U. S. 350; Flint v. Stone Tracy Co., 220 U. S. 107, 161; Lud-

low Saylor Wire Co. v. Wollbrinck, 275 Mo. 239; In re Cupples Estate, 272 Mo. 465; Maguire v. University, 271 Mo. 359. (3) The act (Section 8) provides that if taxes are not paid, suits shall be brought to collect in the name of the State in a court of competent jurisdiction, and this is the only means by which payment may be enforced. This clearly affords the taxpayer such opportunity for a hearing as the law requires and is due process of law. Sections 2 and 8, Franchise Tax Act of 1917; Hagar v. Reclamation Dist., 111 U. S. 701; Davidson v. New Orleans, 96 U. S. 97; Kentucky Railroad Cases, 115 U. S. 321; Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 534; Gallup v. Schmidt, 183 U. S. 300; Security Trust Co. v. Lexington, 203 U. S. 323; Clement National Bank v. Vermont, 231 U. S. 120, 143; Wells-Fargo & Co. v. Nevada, 248 U. S. 165. (4) The Corporation Franchise Tax Act of 1917 by imposing a tax of three-fortieths of one per cent of the par value of the outstanding capital stock and surplus on domestic and foreign corporations and of twenty-five dollars only on corporations having no capital stock does not violate Section 1 of Article XIV of the amendments to the Constitution of the United States. St. L. & S. F. Ry. Co. v. Middlekamp, 256 U. S. 224; N. W. Mutual Life Ins. Co. v. Wisconsin, 247 U. S. 132; Flint v. Stone-Tracy Co., 220 U. S. 107; Bells Gap Co. v. Penna., 134. U. S. 232; Baldwin Tool Works v. Blue, 240 Fed. 202.

*C. W. Hamlin* for respondent.

(1) That corporations organized for profit in another State with or without capital divided into shares, may be admitted to do business in Missouri is no longer a debatable question. State ex rel. Standard Tank Co. v. Sullivan, 249 Mo. 512. (2) The words "any other corporation . . . having no capital stock" (Sec. 6, Laws 1917, p. 239) refer to corporations organized having its "capital" divided up into shares without a par or nominal value. Tank Car Case, supra. (3) The right of

the Legislature to classify property for the purpose of
taxation is conceded and that authority extends to the tax-
ation of privileges, but the classification must be a reason-
able one, i. e., must not be illusory or arbitrary. Sams v.
Railway Co., 174 Mo. 53, 73; Royster Guano Co. v. Vir-
ginia, 40 U. S. 560, 64 L. Ed. 658; Norfolk Water Com-
pany v. City of Norfolk, 246 Fed. 650; L. & N. Railroad
Co. v. Bosworth, 230 Fed. 191, affirmed in 244 U. S. 522,
61 L. Ed. 1309; Chicago M. & St. P. Railway Co. v. Wesby,
178 Fed. 619.    (4)   An act of the Legislature classifying
property, persons or privileges for taxation to stand in
the face of the Constitution must include all who belong
to the class and must not include any who do not belong
to the class. Sams v. Ry. Co., 174 Mo. 53, 73; Ludlow-
Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 357; City of
Independence v. Gates, 110 Mo. 382; Kansas City v. Whip-
ple, 136 Mo. 479.    (5)   There is a difference between
"capital" and "capital stock" recognized both in law
and in business. Van Allen v. Assessors, 3 Wall. 573,
584; People v. Commissioners of Taxes, 4 Wall. 244;
Wetherbee v. Baker, 35 N. J. Eq. 501; 14 C. J. p. 385.   (6)
The act in question attempts to tax corporations organ-
ized for profit three-fortieths of one per cent on its "out-
standing capital stock and surplus." In other words, the
basis of the tax to be levied is on the indebtedness of the
corporation to its shareholders as represented by its
"outstanding shares," and not on its capital. Laws 1917,
p. 237.

DAVID E. BLAIR, J.—Appellant has made and re-
spondent has accepted the following statement:

"This was an action to recover delinquent corpora-
tion franchise taxes. Defendant, respondent here, is a
private corporation, organized and existing for profit un-
der the laws of plaintiff. In compliance with the terms of
the Corporation Franchise Tax Law, defendant made a re-
port in writing to the State Tax Commission for the year
1919. The report disclosed a capital stock and surplus

of $240,000, and under the authority of that law the State Tax Commission assessed a tax against defendant in the sum of $180 for that year. The tax remaining due and unpaid on May 1, 1919 (the delinquent day named in the statute), the State Treasurer certified the name of the defendant to the Attorney-General for collection of the tax. The Attorney-General brought this suit to collect the tax, together with the statutory penalty and interest.

"Defendant demurred to the petition on the ground that the Corporation Franchise Tax Law is unconstitutional in that it violates Sections 3 and 4 of Article X, and Section 30 of Article II of the Constitution of the State of Missouri, and Article XIV of the Constitution of the United States. The demurrer was sustained by the trial judge and judgment was entered for defendant. From this judgment plaintiff appeals to this court."

The act under which the suit was brought is found in Laws of 1917 at pages 237 to 242. It was amended in 1919 and again in 1921. Such amendments need not be noticed, for the reason that the validity of the corporation franchise tax here involved must be determined from the original 1917 act.

Briefly sketched, Section 1 of the act then in force provides that every corporation, whether organized under the laws of this State or not, engaged in business in this State, shall pay an annual franchise tax equal to three-fortieths of one per cent of the par value of its outstanding capital stock and surplus employed in this State. The act does not apply to corporations not organized for profit or to express and insurance companies, a tax upon which was otherwise provided for. The details provided for determining and collecting the tax need not be recited. Sections 4, 5 and 6 of the act provide for reports from, and payment of certain flat fees by, corporations having no capital stock, insurance companies and building and loan associations.

It is the contention of respondent that the act violates certain provisions of our State Constitution and the

Fourteenth Amendment to the Federal Constitution. In its brief respondent has apparently abandoned the contentions, made below in its demurrer to the petition, that the act violates Section 4 of Article X of our Constitution, which provides that "all property subject to taxation shall be taxed in proportion to its value." We think the question is no longer an open one in this State, in view of the following cases: State ex rel. Marquette Hotel Investment Co. v. Tax Commission, 282 Mo. 213; Mass. Bond. & Ins. Co. v. Chorn, 274 Mo. 15; Express Co. v. St. Joseph, 66 Mo. 675.

The great weight of authority is to the effect that a franchise tax is not a property tax. [Southern Gum Co. v. Laylin, 64 N. E. (Ohio) 564; State v. Railroad Co., 45 Md. 361; Phoenix Carpet Co. v. State, 118 Ala. 143; State v. Insurance Co., 89 Ala. 338; People ex rel. v. Knight, 174 N. Y. 475; People v. Insurance Co., 92 N. Y. 328.]

Respondent does not contend in its brief here, as in its demurrer below, that the act violates Section 30 of Article II of our Constitution, or the due process clause of the Fourteenth Amendment to the Federal Constitution. This very act was sustained by the United States Supreme Court as against such attack in St. Louis-San Francisco Ry. v. Middlekamp, 256 U. S. 1. c. 229.

The constitutional attacks still made by respondent are that the act violates Section 3 of Article X of the Missouri Constitution and the "equal protection of the laws" clause of the Fourteenth Amendment to the Federal Constitution. It is asserted that the act does not afford equal protection of the laws, for the reason that the tax is not uniform upon the same class of subjects within the State, as required by Section 3 of Article X of the Missouri Constitution. Therefore, if the act be found not to be violative of this section of the Missouri Constitution, we may safely assume it affords equal protection of the laws, as required under the Federal Constitution.

In State ex rel. Standard Tank Car Co. v. Sullivan, 282 Mo. 261 (221 S. W. 728), this court required the Secretary of State to grant authority to do business in this State to a corporation organized under the laws of another state and having shares of common stock of no stated par value. Our statutes were there held to contain no authority for the organization in this State of such a corporation. At pages 280 and 281, Judge GOODE used the following language:

"We think of no reason why the State should desire to exclude from its borders companies organized in other states and having those species of stock, merely because companies similarly constituted cannot be organized here. Instead, legislation has occurred in recognition of the possibility of corporations having no capital stock and organized for profit in another State, being admitted to this State, *and to the fact that they have been admitted*. In the act laying a franchise tax on corporations generally, foreign corporations without a capital stock are required to report to the taxing authorities regarding their business, in such manner as may be prescribed, and a lump annual tax is laid upon them. [Laws 1917, pp. 238, 239, secs. 4, 5 and 6.] Our statutes make no provision for the formation of such companies, except certain classes of mutual insurance companies and possibly a few others, though the mutual insurance companies are all we call to mind. [R. S. 1909, Arts. X, XI and XII.] But Section 6 of the Franchise Tax Law includes, among foreign corporations having no capital stock upon which a franchise tax may be laid, not only mutual and other insurance companies organizable under our statutes, *but any other foreign corporation organized for profit and without a capital stock*. The language of one section prescribing the tax, makes it apply to every corporation organized as a mutual insurance corporation with no capital stock, and *any other corporation* not organized strictly for religious, charitable or educational purposes and having no capital stock."

Respondent has seized upon this language as authority for the proposition that a foreign corporation, without capital stock *and organized for profit,* may be admitted to do business in this State and be subject only to the flat corporation franchise tax of $25 per annum, while a Missouri corporation, engaged in like business and employing the same amount of property and assets in this State, is subject to a corporation franchise tax much greater in amount. Thus respondent finds discrimination under the act against Missouri corporations, in favor of corporations not organized under the laws of this State, but engaged in business herein, and argues that thus the franchise tax provided for does not apply uniformly upon the same class of subjects and violates Section 3 of Article X of our Constitution.

For the purposes of the case, we will assume that, if respondent's contention that only the $25 flat fee is imposable upon such corporations is sound, discrimination and therefore want of uniformity exist. But we do not agree with respondent's premise that a corporation, *organized for profit* under the laws of a foreign state and having no capital stock, may come into this State and do business herein and satisfy the Corporation Franchise Tax Law of 1917 by paying a flat fee of $25 per annum.

Let us first attend the Standard Tank Car Case. It must be remembered that the amount and application of the corporation franchise tax were not in any wise matters of decision in that case. In deciding that a corporation having common stock of no stated par value should be licensed to do business in this State, Judge Goode merely referred to the corporation franchise tax law to illustrate his point that the Legislature had passed laws looking to the possibility of corporations without capital stock being organized in this State and providing for taxing corporations of other states having no capital stock.

But if Judge Goode in that case intended to hold (and we think he had no intention of so holding) that a foreign corporation, having no capital stock and organized for

305 Mo.—7.

profit, could do business in this State by paying the flat corporation franchise tax of $25 per annum, such holding must be regarded as *obiter*. When Judge GOODE observed, "But Section 6 of the Franchise Tax Law includes, among foreign corporations having no capital stock upon which a franchise tax may be laid, not only mutual and other insurance companies organizable under our statutes, *but any other foreign corporation organized for profit and without a capital stock,*" he did not use the exact language of Section 6. Nowhere in the section, and particularly not in referring to "other corporation not organized strictly for religious, charitable or educational purposes and having no capital stock," is any use whatever made of the words "organized for profit" found in the italicized words used by Judge GOODE.

It cannot fairly be gleaned from the 1917 Act that corporations of this or any other state, *organized for profit* and having no capital stock, are subject only to the flat corporation franchise tax of $25 per annum. Quite the contrary is evidently the fact. After providing in' Section 1 for the payment of such tax by domestic and foreign corporations upon their business in this State, we find this proviso : "Provided, that this act shall not apply to corporations not organized for profit, nor to express companies, which now pay an annual tax on their gross receipts in this State; and insurance companies, which pay an annual tax on their gross premium receipts in this State." Said Section 1 clearly provides that every corporation, whether organized under the laws of this State or not, shall pay a corporation franchise tax to the extent that such corporation employs its capital and surplus in its business in this State. That the tax applies to every corporation *organized for profit,* is apparent from the proviso at the end of Section 1 above quoted. Under the maxim *inclusio unius est exclusio alterius,* the only corporations exempt from the franchise tax of three-fortieths of one per cent are those *not organized for profit* and those engaged in the express or insurance business.

It is evident that the General Assembly regarded corporations having no capital stock, referred to in Sections 4, 5 and 6 of the act, as corporations not organized for profit, and hence not subject to the tax provided for in Section 1. Section 6 illustrates the kind of corporations referred to in Section 4 as those having no capital stock. The first class is composed of mutual insurance companies. It is well understood that such companies are not organized for profit. The second class is composed of corporations "not organized *strictly* for religious, charitable or educational purposes and having no capital stock." The use of the word "strictly," which we have italicized, is significant. Its use indicates that corporations not organized for profit may nevertheless fail to come within the definition of corporations organized for religious, charitable or educational purposes. Corporations organized to further activities of a purely social nature, assuming such a corporation may be organized, might well be considered as being included in this class. They would not be strictly corporations organized strictly for religious, charitable or educational purposes. Certainly, the Legislature never intended that a business corporation, *organized for profit,* existing under the laws of some foreign state or organized under the laws of this State, if our laws should hereafter be amended to permit such corporations to be organized here, should come within the provisions of Section 6 of the act and pay a flat corporation franchise fee of $25 per annum. The context of the three sections (4, 5 and 6) is inconsistent with any such idea.

The third class, mentioned in Section 6, is composed of companies organized to transact the business of life or accident insurance on the assessment plan for mutual protection and benefit of its members, etc. Profit is not the purpose of such corporations.

The general words "any other corporation . . . having no capital stock," following particular words, under the rule *ejusdem generis,* must be regarded as limiting

such other corporations to those of the same class and character as those described by the particular words.

The foreign insurance companies mentioned in the latter portion of Section 6 are those having capital stock and the amount of the flat incorporation franchise tax imposable upon them is fixed at $50 or $100 dependent upon the amount of such capital stock. Building and loan associations pay a flat fee of $25, but they are of a character entirely different from ordinary corporations organized for profit.

The conclusion is unescapable that none of the corporations mentioned in Sections 4, 5 and 6 are corporations organized for profit. There is a sound basis for so classifying them and for taxing them upon a different basis from that employed in taxing corporations organized for profit.

Respondent relies upon the case of Southwestern Bell Telephone Co. v. Middlekamp (printed as an appendix to appellant's brief, but apparently not officially reported), as supporting its contention that the 1917 corporation franchise tax law is violative of the "equal protection of the laws" provision of the Fourteenth Amendment to the Federal Constitution and of Section 3, Article X, of our State Constitution. The *per curiam* opinion in that case holds that the opinion of this court in the Standard Tank Car case "clears up any possible doubt of the construction which must be placed upon the words 'corporations having no capital stock' as used in the Franchise Tax Law." The *per curiam* opinion then quotes from Judge Goode's opinion in the Standard Tank Car case the words we have above quoted therefrom. After stating its understanding of the views of this court's construction of the corporation franchise tax law, the Federal judges said:

"From the foregoing, it must be apparent that an ordinary corporation with capital stock must pay a franchise tax based upon 'three-fortieths of one per cent'. of certain values defined in the statute; while a corporation,

without capital stock, doing business in Missouri, is only required to pay a fee of twenty-five dollars.

"A telephone company, organized in · some other state, without capital stock, but transacting as much business, and using as much capital as does the plaintiff, would, under the provisions of the act, pay twenty-five dollars, while the facts in this case show that the plaintiff is assessed approximately fifty-three thousand dollars."

The conclusion reached by the Federal court judges was that "the Franchise Tax Law, in the foregoing respect, violating the constitutional requirements that 'no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, . . . nor deny to any person within its jurisdiction the equal protection of the laws' must be held void."

But the persuasive authority of Southwestern Bell Telephone Co. v. Middlekamp, supra, is completely destroyed by the decision of the United States Supreme Court in the case of St. Louis-San Francisco Ry. v. Middlekamp, 256 U. S. 226, which in effect overruled the opinion of the Federal district court in the Southwestern Bell Telephone Co. case, although the Supreme Court opinion was not written in that case. Mr. Justice HOLMES said:

"The next objection to the tax has assumed greater importance than any other because it induced the same judges who sat in this case to change their opinion and issue a temporary injunction in a suit like this brought by the Southwestern Bell Telephone Company. We will comsider it, although it hardly is open on the bill. It now has been decided by the Supreme Court of Missouri that corporations with stock having no stated par value can be admitted to do business in the State (State ex rel. Standard Tank Car Co. v. Sullivan, 282 Mo. 261), and that decision was taken to mean that all such corporations fall within a provision imposing a tax of only twenty-five dollars upon foreign corporations without a capital stock.

On that ground it was held that the Southwestern Bell Telephone Company was denied the equal protection of the laws. We hesitate to differ from judges presumably familiar with local conditions, but we cannot read the careful discussion by the Missouri court as having the meaning supposed. It is true that it adverts to the 'lump annual tax' imposed upon foreign corporations without a capital stock while arguing that the policy and laws of Missouri do not forbid their entering the State. But at a later page it quotes with approval a Kansas case to show not only that the absence of a stated value for the stock would create no difficulty in determining whether a corporation should be admitted, but also that it would create equally little difficulty in applying the tax imposed upon corporations with stock having a stated par. Until the Supreme Court of the State decides otherwise we shall assume that the supposed inequality of treatment does not exist.''

The result was that the Supreme Court of the United States disagreed with the conclusion reached by the United States District Court in the Southwestern Bell Telephone Co. case, and refused to hold our corporation franchise tax law to be violative of the ''equal protection of the laws'' provision of the Federal Constitution. Since Section 1 of the Act of 1917 contemplates, as we have above held, that every corporation, organized for profit and doing business in this State, except express and insurance companies, shall pay a corporation franchise tax *equal to* three-fortieths of one per cent of the par value of its outstanding stock and surplus and since it is plain that corporations without capital stock, which are not organized for profit, shall pay the flat fee of $25 per annum, the contention of discrimination and inequality, so earnestly urged upon us by respondent, must be overruled. If all corporations organized for profit are required to pay a franchise tax upon the same basis, there is no want of uniformity, as denounced by Section 3, of Article X of our Constitution, and no want of equal pro-

tection of our laws, in violation of the Fourteenth Amend-
ment to the Federal Constitution. We, therefore, need
not notice the many cases cited by respondent holding
that laws permitting such discrimination and inequality,
when found to exist, are invalid.

But the question arises whether the tax provided for
in Section 1 can be applied under said act to a foreign
business corporation organized for profit and having no
capital stock. It will be noted that the tax is not levied
upon the capital stock and surplus, but is merely meas-
ured thereby. It is a tax imposed upon corporations for
the privilege of doing business in this State. The act was
apparently drawn with the idea that *all* business corpo-
rations, domestic as well as foreign, would be stock com-
panies having shares of stated par value. But the act
carries another equally effective method of measuring the
tax. With the exception of the word "outstanding," the
following provision for measuring the tax upon the pro-
portion of the property and assets employed in this State,
by both domestic and foreign corporations organized for
profit, is provided by Section 1, to-wit: "for the pur-
poses of this act such corporation shall be deemed to have
employed in this State that proportion of its entire (out-
standing) capital stock and surplus that its property and
assets in this State bears to all its property and assets
wherever located." Our statutes do not provide for the
organization of a corporation not having shares of stock
of definite par value and no difficulty can arise in measur-
ing the tax payable by Missouri corporations on the capi-
tal stock and surplus basis. If a corporation, not organ-
ized under our laws, but organized for profit and having
no capital stock, comes into this State and engages in
business herein, the corporation franchise tax, imposable
upon its capital stock and surplus employed in this State,
can be determined by the provision above quoted. Even
as to Missouri corporations doing business exclusively
within this State, the tax upon surplus, if any, must be

determined by some other means than by the par value of capital stock.

Section 9792, Revised Statutes 1919 (Sec. 3039, R. S. 1909), provides that a corporation, not organized under the laws of this State and licensed to do business in this State, "shall be required to pay into the State Treasury upon the proportion of its capital stock represented by its property and business in Missouri" certain fees. In the Standard Tank Car case this provision was not regarded as presenting any "unusual difficulty in determining what taxes ought to be paid by relator and similar corporations if licensed to come into this State." Nor do we think any greater difficulty will be encountered by the tax commission in determining the corporation franchise tax due from and payable by a foreign corporation organized, for profit without capital stock and doing business in this State. The act is perhaps not happily worded, but we think the intent of the Legislature is clear and that the law is valid and workable.

It is contended that corporations having no capital stock are only required to report the information called for in Section 5 of the act and that, therefore, the tax commission would have no means of determining the amount of tax due from them. This would be true only upon the assumption that corporations, having no capital stock and organized for profit, come within the provisions of Section 4. But the moment it is ascertained that a corporation is organized for profit, it cannot be considered as coming within the provisions of Section 4, as we have above held, and such corporation must be regarded as coming within the provisions of Section 1, which clearly cover all corporations organized for profit. Such corporations, therefore, must make the reports called for by Section 2 and are subject to the power of the tax commission to make independent investigation under the provisions of Section 3 and no difficulty is in the way of the tax commission assessing a franchise tax against such foreign corporations equal to three-fortieths of one per

cent of their capital stock and surplus employed in business in this State.

For the reasons above stated, it results that the judgment of the court below, holding the Corporation Franchise Tax Act of 1917 unconstitutional, should be reversed and remanded with directions to enter judgment in that court for plaintiff, as prayed in its petition. It is so ordered. All concur.